STONEHOUSE v. STONEHOUSE.

SPECIFIC PERFORMANCE—CONTRACTS—DEEDS—DELIVERY — EQUIT-
ABLE TITLE—LACHES—LIMITATION OF ACTIONS.
On a bill for the specific performance of a land contract, it ap-
peared that, on complainant becoming of age, he desired to
engage in business for himself; that his father, desiring him
to remain at home, agreed if he would do so that he would
compensate him therefor; that complainant did so remain;
and that thereafter the father purchased certain property
and later made a deed to complainant who went into occupa-
tion and expended large sums of money in improvements.
The deed of said property was later held to be inoperative for
want of delivery, and was set aside without prejudice to
complainant's right to file a bill for specific performance.
*Held*, that, under the contract and its performance, complain-
ant was the owner of the equitable title, and as he was not
obliged to assert such title until after it had been repudiated,
the statute of limitations did not begin to run until such re-
pudiation; nor as a matter of law was he guilty of laches.

Appeal from Kent; McDonald, J.   Submitted January
12, 1909.   (Docket No. 72.)   Decided March 16, 1909.

Bill by Albert Stonehouse against Delbert Stonehouse
and others for the specific performance of a land contract.
From an order overruling a demurrer to the bill, defend-
ants appeal.   Affirmed.

*Smedley & Corwin* and *Frank W. Hine*, for com-
plainant.

*Gleason & Lee*, for defendants.

BLAIR, C. J.   Complainant and his wife were defend-
ants in the case of *Gleason* v. *Stonehouse*, reported in
149 Mich., at page 611.   The bill in that case was filed to
set aside a deed of certain premises on the ground that

the deed was never delivered, to determine that complainant was the owner of the undivided one-third thereof, and for an accounting. This court determined that the deed was not delivered, that the complainant was entitled to the rents and profits of her one-third interest, subject to any defense that might be made in the accounting case pending in the circuit court, and entered decree accordingly. The decree contains the following clause, viz.:

"Nothing herein contained shall be construed as depriving the defendant, Albert Stonehouse, from any remedy he may have for a specific performance of a contract he may have had with said John Stonehouse in his lifetime for a conveyance to him, said Albert Stonehouse, of any or all of the real estate hereinbefore described."

In pursuance of this provision of the decree, Albert Stonehouse filed his bill of complaint in the present suit for a specific performance of the alleged contract. To this bill the defendants demurred, the court overruled the demurrer, and defendants have appealed to this court.

The grounds of demurrer, as summarized by counsel for defendants in their brief, are as follows:

"(1) The alleged contract is too indefinite and uncertain to be specifically enforced.
"(2) Laches. Twenty-six years having elapsed before action brought after the right of action accrued and 24 years since the father's death.
"(3) Statute of limitations.
"(4) The alleged contract was oral and void under the statute of frauds.
"(5) The alleged contract is void for want of mutuality."

We are of the opinion that the contract is set out with sufficient definiteness and certainty. The contract is stated in the fifth paragraph of the bill, as follows:

"And your orator shows that when he became of age he expressed the wish to his father, said John Stonehouse, that he would like to leave home and go to work for himself, that he disliked housework and preferred to get into a more congenial business, and that at that time said

John Stonehouse told your orator that his mother was unable to attend to the housework, and wished your orator to stay at home, and that if your orator would stay at home until the death of his mother and do the housework and look after the invalid mother and the younger children, that he (John Stonehouse) would pay him more than he could possibly earn at any other employment. That thereupon your orator agreed with his said father, in consideration of his father's said promises, to stay at home and work for his father and mother until the death of his mother, doing the housework, looking after the younger children, and caring for his invalid mother, and did so remain and work and care for said mother until her death as aforesaid."

While the amount to be paid for complainant's services was not certain, such amount was made certain after the mother's death, by mutual agreement that the real estate in question should be purchased for complainant by his father.

"That said property was purchased by said John Stonehouse for your orator, and for the sole purpose of securing for your orator a permanent location for his drug business, and was so stated by said John Stonehouse, and said property was purchased on the expressed understanding that said property was to belong to your orator in consideration for his services to said John Stonehouse as aforesaid. * * * That said John Stonehouse, in his lifetime, claimed no interest in said premises and said rents, but told your orator at different times that said premises and said rents belonged to your orator, and that said property was purchased for your orator and in pursuance of his contract so made with your orator as aforesaid, and that he, said John Stonehouse, claimed no interest therein. * * * And your orator further shows that in the latter part of 1882, or the early part of 1883, said John Stonehouse told your orator that he would make a deed of said property to your orator, as he had agreed to do, and that as soon as he got back to his home at Maple Hill he would have a deed made out to your orator of the property hereinbefore described, and signed by himself and wife, Anna Stonehouse, and send the same to your orator. That in pursuance of said agreement said John Stonehouse and his wife, Anna, on the 7th day of May, 1883, executed a deed of

said premises to your orator. That said deed was properly witnessed and acknowledged by said John Stonehouse and wife, and the same afterwards came to the possession of your orator and was by him duly placed on record in the office of the register of deeds of Kent county, Mich., on the 1st day of June, 1883, and is recorded in liber 148 of deeds, at page 488. That shortly after the execution of said deed, and a short time prior to his death, said John Stonehouse informed your orator that he had made a deed of said premises to your orator in accordance with his said agreement, and told your orator to get the deed and place it on record at any time your orator desired so to do. * * * And your orator shows that, ever since the purchase of said property as aforesaid, your orator has been in actual possession of said premises under the agreement made with said John Stonehouse that said property was to be his in consideration of services rendered said John Stonehouse by your orator, and ever since the making of said deed by said John Stonehouse and wife, your orator has occupied said premises in perfect security, believing that said deed was perfectly valid, and that the same had been legally delivered to him, and up to the time of the filing of said bill by said Bentley and Gleason no question was ever made by anyone that said deed was not a good and valid conveyance, and that your orator's title was not a perfect one by virtue of the deed aforesaid.'

Under the showing made by his bill, complainant was given, and accepted, the premises in satisfaction of and in accordance with his agreement with his father. He subsequently obtained a deed which he placed upon record, believing it to be a valid conveyance, and occupied under it, as he supposed, for 20 years. He expended about $12,000 in improvements and had no suspicion of any infirmity in his title until 1903. Under such circumstances, complainant was the owner of the equitable title. *Maas* v. *Insurance Co.*, 148 Mich. 432; *Bakker* v. *Fellows*, 153 Mich. 428. Complainant was under no obligation to assert his equitable title until after a repudiation of his right, and the statute of limitations did not begin to run against him until such repudiation. Neither can he be held guilty of laches, as a matter of law. *Low* v.

*Low*, 173 Mass. 580; *Michie* v. *Ellair*, 54 Mich. 518.

We are of the opinion that the other questions discussed in the briefs require no further consideration, and the order of the circuit court is affirmed, with costs.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.