STEWARD v PANEK

Docket No. 222847. Submitted October 19, 2001, at Detroit. Decided June 4, 2002, at 9:05 A.M.

Emanuel and Marie Steward and Elbert and Estelle Steel brought an action in the Wayne Circuit Court against Angel Panek and others, seeking specific performance of an eighteen-year-old agreement for the purchase of a condominium, seeking to quiet title to the condominium, and seeking damages for the intentional infliction of emotional distress allegedly caused by the defendants' pursuit of eviction proceedings against the Steels. The Stewards had purchased the condominium from the defendants under an agreement that provided that they were to receive a deed upon full payment of the purchase price. The Stewards allegedly made full payment shortly after the purchase, but never received a deed. The Stewards leased out the condominium to the Steels, whose eviction from the condominium was sought by the defendants eighteen years after the purchase. The court, Kaye Tertzag, J., granted summary disposition for the defendants, ruling that the claims for specific performance and to quiet title were barred by the applicable statutes of limitation, that the plaintiffs failed to establish an interest in the condominium that entitled them to seek to quiet title to the property, and that the claim of intentional infliction of emotional distress lacked merit. The plaintiffs appealed.

The Court of Appeals *held*:

1. The six-year statute of limitations that applies to the claim for specific performance, MCL 600.5807(8), does not bar that claim. The plaintiffs' claim for specific performance accrued not when the Stewards allegedly paid the purchase price in full, but when the defendants repudiated the plaintiffs' equitable right to the property by initiating eviction proceedings against the Steels.

2. Because a question of fact existed regarding whether the Stewards have equitable title to the property by virtue of their full payment of the purchase price, the trial court erred in summarily dismissing the claim to quiet title on the ground that the plaintiffs failed to establish an interest in the property.

3. The fifteen-year statute of limitations that applies to the claim to quiet title, MCL 600.5801(4), does not bar that claim. The plaintiffs' claim to quiet title did not accrue until the defendants initiated the eviction proceedings.

4. The trial court did not err in dismissing the claim of intentional infliction of emotional distress. The defendants' conduct in initiating eviction proceedings did not rise to the level of extreme and outrageous conduct required for a claim of intentional infliction of emotional distress.

Affirmed in part, reversed in part, and remanded for further proceedings.

VENDOR AND PURCHASER — LAND CONTRACTS — EQUITABLE TITLE — LIMITATION OF ACTIONS — SPECIFIC PERFORMANCE — QUIET TITLE.

A land contract purchaser holds equitable title to the property to the extent of payments made and is not under an obligation to assert equitable title until after a repudiation of that title; accordingly, the statutes of limitation that apply to actions by the purchaser for specific performance of the purchase agreement and to quiet title to the property do not begin to run until the vendor repudiates the purchaser's equitable title (MCL 600.5801[4], 600.5807[8]).

*Parks & Najar, P.L.C.* (by *George Parks*), for the plaintiffs.

*Miro, Weiner & Kramer* (by *Gary J. Bazydlo*), for the defendants.

Before: BANDSTRA, C.J., and DOCTOROFF and WHITE, JJ.

PER CURIAM. Plaintiffs appeal as of right an order of the circuit court granting defendants summary disposition in this dispute over ownership of a condominium. We affirm in part, reverse in part, and remand for further proceedings.

I

On November 13, 1980, plaintiffs Emanuel and Marie Steward entered into a "reservation and subscription agreement" with defendant Henry Panek Investments, Inc., in which the Stewards agreed to pay $38,000 for a condominium unit on West Outer

Drive in Detroit.[1] According to the terms of the reservation and subscription agreement, the Stewards agreed to pay a $10,000 deposit on signing the agreement, and the remaining $28,000 by December 22, 1980, and Henry Panek Investments agreed to convey title to the property upon receipt of the payments.[2] Although the Stewards claim, and defendants do not dispute, that they made the payments according to the agreement,[3] no deed was ever executed transferring ownership of the property. The Stewards apparently leased the property to plaintiffs Elbert and Estelle Steel in 1980. Yet, defendants Angel Panek and

---

[1] We note at the outset that many of the "facts" of this case are sketchy at best. For instance, the agreement describes the property as "Unit 31" at 9676 West Outer Drive; however, plaintiffs' complaint provides a legal description that refers to the condominium as Unit 12. The agreement does not include any description of the property other than its street address and unit number, referring to a "Condominium Subdivision Plan," which was neither incorporated into the agreement nor present in the lower court record.

[2] Two different copies of the agreement are present in the lower court record, one attached to plaintiffs' complaint and the other submitted by defendants. Plaintiffs' copy is partially handwritten and states that the due date for the second payment was December 22, 1980, while defendants' copy states that the second payment was due by January 22, 1981. Defendants' copy is also dated December 16, 1980, as opposed to the November 13, 1980, date on plaintiffs' copy. It does not appear that there are any other substantive differences between the two copies.

[3] Plaintiffs support with an affidavit of Emanuel Steward their assertion that the Stewards paid the $38,000 agreed upon for the condominium. No documentary evidence of these payments was submitted to the lower court. However, this fact does not appear to be in dispute. At the hearing on the motion for summary disposition, the following discussion occurred:

*The Court:* It appears that your client got the benefit of the contract in terms of the $38,000 or somebody got $38,000.

*Mr. Bazydlo [defense counsel]:* Initially that's probably correct.

Deborah Paruch[4] testified by way of affidavit that neither the Stewards nor the Steels paid taxes or condominium fees for the property, and that Angel Panek maintained and repaired the unit as owner. Plaintiffs claim that the Steels resided in the condominium from 1980 until defendants filed an eviction action in 1998.

On October 23, 1998, after defendants filed the eviction proceeding, plaintiffs filed a complaint seeking to quiet title to the condominium and to obtain specific performance of the agreement. Plaintiffs also alleged that defendants were liable for malicious prosecution and intentional infliction of emotional distress for bringing the eviction action against the Steels. In November 1998, defendants moved for summary disposition, arguing that plaintiffs' claims to quiet title and for specific performance were barred by the statute of limitations. Defendants further argued that plaintiffs could not maintain an action to quiet title because they failed to plead title or an interest in the property. Regarding plaintiffs' claim for malicious prosecution, defendants sought dismissal because the underlying eviction action had not been concluded and plaintiffs could not prove that they prevailed in that action. Finally, defendants argued that they could not be liable for intentional infliction of emotional distress where they were merely seeking to enforce their legal rights. Plaintiffs responded to defendants' motion with a very brief argument that their action was not based solely on contractual claims, and they were relying on their adverse possession of the property for the past seventeen years.

---

[4] Angel Panek is the widow of Henry Panek, who apparently died shortly after entering into the purchase agreement in this matter. Deborah Paruch is the daughter of Henry and Angel Panek.

The circuit court heard oral arguments on defendants' motion in March 1999, at which time plaintiffs stipulated the dismissal without prejudice of their malicious prosecution claim. The court dismissed the intentional infliction of emotional distress claim, but reserved its ruling regarding the remaining claims.[5] After the hearing, plaintiffs filed a supplemental brief arguing that their claim to quiet title was not barred by the statute of limitations because the limitation period did not begin to run until there was repudiation of title, relying on *Stonehouse v Stonehouse*, 156 Mich 43; 120 NW 23 (1909). According to plaintiffs, repudiation of title did not occur in this case until defendants filed the eviction action in 1998. On July 15, 1999, the circuit court indicated that it would grant summary disposition of plaintiffs' claims to quiet title and for specific performance and entered an order dismissing the remaining claims on September 22, 1999.

II

We first address plaintiffs' argument that the circuit court erred in dismissing their claim for specific performance of the agreement. Defendants moved for summary disposition of this claim pursuant to MCR 2.116(C)(7), arguing that the applicable statute of limitations barred the claim. In reviewing a motion under MCR 2.116(C)(7), we accept all of the plaintiff's well-pleaded allegations as true unless specifically contradicted by affidavits or other appropriate documentation submitted by the moving party. *Patterson v Kleiman*, 447 Mich 429, 434, n 6; 526 NW2d 879 (1994). In addition, we consider all affidavits, pleadings, deposi-

---

[5] The court also heard and denied a motion by plaintiffs for an injunction to halt the eviction action.

tions, admissions, and documentary evidence filed or submitted by the parties. *Id.* at 434.

In this case, defendants do not dispute that plaintiffs would have been entitled to specific performance of the agreement, assuming that they paid defendants the $38,000. Instead, defendants argue that the applicable limitation period expired with respect to plaintiffs' claim for specific performance. An action for specific performance is timely if it is filed within six years of the date that the claim accrues. *Schneider v Fox*, 73 Mich App 595, 597; 252 NW2d 530 (1977). MCL 600.5807 provides, in pertinent part:

> No person may bring or maintain any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section.
>
>          \*      \*      \*
>
> (8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

Plaintiffs concede that the six-year statute of limitations is applicable, but assert that the specific performance claim did not accrue until defendants initiated the eviction action in 1998, not when they paid the $38,000 in 1980, relying on *Stonehouse, supra.*[6] We agree.

---

[6] Defendants respond to this argument by claiming that plaintiffs' argument regarding *Stonehouse* and the repudiation principle was not properly preserved because plaintiffs raised this argument in a supplemental brief to the circuit court after oral argument had already been heard. We disagree. An issue is preserved if it is raised before and addressed by the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). Here, plaintiffs raised the issue in their supplemental brief. Further, defendants submitted a reply to plaintiffs' supplemental brief, and

In *Stonehouse*, the plaintiff sought specific performance of a contract to convey real property. The plaintiff took possession of the property and occupied it for twenty years. He also obtained a deed that he believed to be valid and recorded it. However, the deed was deemed invalid because it was not "delivered." The defendant argued that the statute of limitations barred the plaintiff's claim. Our Supreme Court held:

> Under such circumstances, complainant was the owner of the equitable title. Complainant was under no obligation to assert his equitable title until after a repudiation of his right, and the statute of limitations did not begin to run against him until such repudiation. [*Stonehouse, supra* at 46 (citations omitted).]

As in *Stonehouse*, plaintiffs here took possession under the contract and held possession unchallenged for many years. As owners of the equitable title, plaintiffs were under no obligation to assert their equitable title until after a repudiation of their rights (the commencement of the eviction proceeding), and the period of limitation did not begin to run until such repudiation.

The law in this regard is clear. In *Rodgers v Beckel*, 172 Mich 544, 550-551; 138 NW 202 (1912), our Supreme Court explained:

> On the other hand, it is well settled, as applied to the remedy of specific performance, that, if the vendee of land takes and retains possession of premises with the vendor's consent and makes payment therefor, mere delay in bringing suit, however long continued, will not defeat his remedy, unless special conditions have intervened and the rela-

---

the circuit court stated that its order granting summary disposition was based on defendants' earlier briefs and plaintiffs' supplemental brief. Therefore, the issue was properly preserved.

tions of the vendor to the land have so altered that a specific execution of the agreement becomes impossible or inequitable. Pomeroy on Contracts, § 404; Waterman on Specific Performance of Contracts, § 468; 36 Cyc p 732. The principles applicable to such a case are very succinctly stated in an opinion written by Justice Tucker in the early case of *Williams v Lewis*, 32 Va 686 [1834]. Williams filed a bill in 1822 for specific execution of a land contract made with Lewis' father in 1774. Williams had been in possession of the premises since the latter date, and had paid for same by surrendering certain claims to other property. The court said:

"Still less does it become him or them, to set up the defense of the length of time in bar of this equitable title. It is not admissible on the part of a vendor against his vendee. The relation in which they stand to each other forbids it. The former is a trustee for the latter; and the trust can never be determined but by a conveyance of the title. The vendor can never be permitted to set up his own omission to make a deed, against the right of the vendee to demand one. Yet less can he invoke the aid of those cases, which discountenance the assertion of a stale equity, by a party out of possession, against an adversary claimant in possession. For here Williams has been in continued and uninterrupted possession from about the year 1774 to the present day . . . ."[7]

Defendants have made no claim that special conditions have intervened and their relations to the property have so altered that specific performance of the contract is impossible or inequitable. We reverse on the basis of the statute of limitations the grant of summary disposition of the specific performance claim.

---

[7] See also *In re Madsen's Estate*, 123 Utah 327, 339; 259 P2d 595 (1953) (where a purchaser was in possession of property under a land contract, the purchaser's action to force delivery of a deed was not barred by the expiration of a limitation period), and *Love v Watkins*, 40 Cal 547 (1871), and cases discussed therein.

III

Plaintiffs next argue that the circuit court erred in granting defendants' motion for summary disposition of their action to quiet title. Again, we agree.

A

We first reject defendants' claim that plaintiffs failed to preserve their argument regarding the action to quiet title. The essence of plaintiffs' argument was that they had absolute equitable title to the condominium unit regardless of the lack of a deed and regardless of the statute of limitations or laches. The record below indicates that plaintiffs asserted their "absolute equitable title" argument to the circuit court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). The fact that plaintiffs may not have fully briefed and argued this issue in their lower court pleadings, or that they now cite authority that the circuit court did not consider, does not preclude them from raising the issue on appeal. Further, this Court may overlook preservation requirements where failure to consider the issue would result in manifest injustice, *Herald Co, Inc v Kalamazoo*, 229 Mich App 376, 390; 581 NW2d 295 (1998), if consideration of the issue is necessary to a proper determination of the case, *Providence Hosp v Labor Fund*, 162 Mich App 191, 195; 412 NW2d 690 (1987), or if the issue involves a question of law and the facts necessary for its resolution have been presented. *Poch v Anderson*, 229 Mich App 40, 52; 580 NW2d 456 (1998).

B

Although the circuit court did not indicate whether it granted the motion pursuant to MCR 2.116(C)(8) or

(C)(10), because the court considered evidence outside the pleadings, we will review this decision under the standard for MCR 2.116(C)(10). *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 NW2d 28 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When reviewing a trial court's decision to grant a motion for summary disposition, we consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). The court should grant the motion only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

In this case, the defendants argued, and the circuit court apparently agreed, that plaintiffs were not entitled to seek to quiet title to the condominium unit because they failed to establish that they had an interest in the property. In response, plaintiffs argued that by entering into the agreement and fully performing their obligations under that agreement, the Stewards had equitable title to the property.

Under the doctrine of equitable conversion, a buyer who performs under a land contract (i.e., pays in full) acquires equitable title, and the vendor holds the legal title to the property in trust. *Pittsfield Twp v Saline*, 103 Mich App 99, 103; 302 NW2d 608 (1981), quoting 77 Am Jur 2d, Vendor and Purchaser, § 317, pp 478-479 [1975 ed, see now 77 Am Jur 2d, Vendor and Purchaser, § 314, pp 340-341].

> "In equity the purchaser is regarded as the owner subject to liability for the unpaid price and the vendor as holding

the legal title in trust for him from the time a valid agreement for the purchase of land is entered into. . . . Thus, as a vendee makes payments on a land contract the vendor becomes trustee for him of the legal estate, and he becomes in equity the owner of the land to the extent of payments made." [*Pittsfield Twp*, *supra* at 103, quoting 77 Am Jur 2d (1975 ed), *supra* at 340-341.]

Where the purchaser pays part of the purchase price and takes possession, the purchaser acquires an equitable title, and the vendor is a trustee of the legal title for the purchaser to the extent of the payment. *Pittsfield Twp*, *supra* at 103. In this case, assuming the Stewards paid the full purchase price for the condominium unit, they would be the equitable owners of the property, and defendants' interest would be a legal title held in trust for plaintiffs.

Further, MCL 600.2932(1) provides:

Any person, whether he is in possession of the land in question or not, who claims any right in, title to, *equitable title to*, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not. [Emphasis added.]

Here, the Stewards had a valid claim that they held equitable title to the property, which, if proved, would be sufficient interest in the property to allow plaintiffs to pursue an action to quiet title. To the extent that the circuit court granted defendants' motion for summary disposition on the ground that plaintiffs were not entitled to bring an action to quiet title, the court erred. In addition, summary disposition was inappropriate because there were genuine issues of material fact. Defendants did not dispute that plaintiffs were in possession of the condominium unit and there was evidence indicating that the Stewards paid

the purchase price agreed on for the property. Therefore, a question of fact existed whether the Stewards had equitable title, and the circuit court should have denied defendants' motion on this ground.

C

Defendants argue, in the alternative, that summary disposition of plaintiffs' action to quiet title was appropriate because the applicable limitation period for bringing the claim expired. We disagree.

Defendants base their argument on MCL 600.5801, which states in part:

> No person may bring or maintain any action for the recovery or possession of any lands . . . unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.
>
> *    *    *
>
> (4) In all other cases under this section, the period of limitation is 15 years.

Defendants argue that plaintiffs' claim to equitable title accrued when the Stewards performed under their agreement with defendants. Plaintiffs argue, again relying on *Stonehouse, supra,* that their claim to quiet title did not accrue until defendants initiated the eviction action in 1998.

Plaintiffs' action was not for "the recovery or possession of any lands." Plaintiffs were already in possession of the property. Plaintiffs' claim to quiet title, which was based on defendants' assertion of an interest inconsistent with the interest claimed by plaintiffs, accrued when defendants asserted that interest by commencing eviction proceedings.

The equitable ownership rights that accrue to a vendee upon payment of the full purchase price cannot be lost by laches or the statute of limitations as long as the vendee is in possession and enjoyment of the estate according to the vendee's rights. 77 Am Jur 2d, Vendor and Purchaser, § 315, pp 342-343. "The owner of an equitable title is under no obligation to assert that title until after the repudiation of his or her rights, and the limitation does not begin to run against the equitable owner until that repudiation." 16 Michigan Civil Jurisprudence, § 152, p 253, citing *Stonehouse, supra.*

Plaintiffs enjoyed peaceful possession of this property for at least seventeen years before defendants saw fit to challenge their ownership and right to possess the property. After acquiescing in plaintiffs' possession of the property for this lengthy period, defendants cannot assert the statute of limitations to prevent plaintiffs from asserting their equitable interest. Plaintiffs were under no obligation to assert their equitable title until it was repudiated by defendants.

IV

Plaintiffs' final argument concerns their claim of intentional infliction of emotional distress. However, plaintiffs abandoned this issue by failing to brief it on appeal.[8] *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 300; 553 NW2d 387 (1996). Even if we were to address this issue, we would conclude that

---

[8] The following is plaintiffs' entire appellate argument on this issue:

In their motion, Defendants correctly stated that these claims depended on the viability of Counts I and II. If this Court reverses the dismissal of either or both of those counts, these claims also should be reinstated because they raise clear issues of fact that cannot be dismissed summarily.

plaintiffs' claim is without merit because defendants' conduct in initiating the eviction action did not rise to the level of extreme and outrageous conduct required for a claim of intentional infliction of emotional distress. *Graham v Ford*, 237 Mich App 670, 674-675; 604 NW2d 713 (1999).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.