*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC M. HARTFIEL,

        Plaintiff-Appellant,

v

CITY OF EASTPOINTE,

        Defendant-Appellee.

FOR PUBLICATION
September 3, 2020
9:00 a.m.

No. 348642
Macomb Circuit Court
LC No. 2018-001610-CH

Before: GLEICHER, P.J., and STEPHENS and CAMERON, JJ.

STEPHENS, J.

Plaintiff appeals as of right the trial court order granting defendant summary disposition under MCR 2.116(C)(10). We affirm in part, reverse in part, and remand.

## I. BACKGROUND

This matter arises from defendant's handling of charges incurred for water and sewer services provided to plaintiff's rental properties. Plaintiff owned two rental properties in the city of Eastpointe: 23126 Beechwood (the Beechwood Property) and 22438 Linwood (the Linwood Property). Defendant's finance director, Randall Blum, established procedures for transferring delinquent water charges from a landlord to a tenant. Pursuant to those procedures, a landlord was required to submit a copy of the lease agreement along with a water affidavit stating that the tenant was responsible for paying the water charges. Subsequent to a landlord's filing both the lease and affidavit, tenants were required to file a security deposit and complete an "ACH Payment Authorization Agreement" to allow automatic withdrawal of the water payment from the tenant's bank account. The written procedures provided that if water service was terminated for nonpayment, the tenant's security deposit was forfeited, and the responsibility for all subsequent water and sewer charges became the responsibility of the landlord. Those subsequent water and sewer charges then became a lien against the property. The procedures required that each new leasehold was subject to the same procedures as the first.

Plaintiff initially entered into a one-year lease on the Linwood Property with Francis Eugene Sauro and Sheri Lou Sauro beginning October 1, 2013, with the tenants assuming responsibility for water and sewer charges. On October 3, 2013, plaintiff and Francis executed a

-1-

water affidavit indicating that the lease agreement made the Sauros responsible for all charges incurred for water during the term of the lease which had an expiration date of October 1, 2014. Plaintiff and the Sauros subsequently renewed their lease agreement twice with one-year leasing terminating on October 1, 2015, and October 1, 2016. No new water affidavits were filed for the Linwood Property. The defendant issued several shutoff notices between April 2014 and April 2015 due to non-payment. Defendant's employee verbally told plaintiff that the water affidavit had been voided due to a poor payment history by the Sauros sometime between October 2015 and January 2016. On June 2, 2016, delinquent charges for unpaid April and May 2016 bills for service to the Linwood Property in the amount of $129.11 were added to plaintiff's tax bill.

Plaintiff leased the Beechwood Property to Tanya Smith and Williams Woodson for a one-year term beginning April 1, 2015. On March 25, 2015, plaintiff, Smith, and Woodson executed a water affidavit indicating that their lease agreement made Smith and Woodson responsible for all charges for water incurred during the term of the lease. The water affidavit indicated that the lease expired on April 1, 2016. Defendant voided the 2015 water affidavit for Beechwood on October 21, 2015, after multiple attempts to automatically withdraw water payments failed. Plaintiff renewed his lease agreement with Smith and Woodson for two additional one-year terms, the first ending April 1, 2017, and the last ending April 1, 2018. Plaintiff claims to have filed a copy of the 2016 lease with the defendant. The defendant claims no record of this filing. It is, however, uncontroverted that when plainitff attempted to file the 2017 lease it was returned to him via certified mail with a letter indicating that the municipality had no understanding of why it had been sent to it. The May 1, 2017 unpaid water bill of $77.02 was added to plaintiff's property tax bill for the year 2018.

On April 23, 2018, plaintiff filed a three-count complaint against defendant, alleging causes of action for quiet title, slander of title, and writ of mandamus. In pertinent part, plaintiff alleged that defendant unlawfully claimed liens against and added to the property tax assessments for his rental properties the unpaid water charges. Plaintiff asserted that defendant's liens were prohibited because he complied with the requirements of MCL 123.165 and MCL 141.121 for both rental properties.

On February 19, 2019, defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10). Relevant to this appeal, defendant argued that plaintiff's quiet title claim was barred by his failure to comply with applicable statutes or defendant's procedures. In response to defendant's motion, plaintiff asked for summary disposition in his favor under MCR 2.116(I)(2), and argued that defendant's procedure for water affidavits included additional requirements to those set forth in MCL 141.121(3) and MCL 123.165. The plaintiff argued that the municipality did not have the authority to impose such additional requirements. Therefore, since he was compliant with state law, the defendant was prohibited from imposing liens on his properties. Plaintiff asserted that once water affidavits were filed, defendant's only remedy for nonpayment was to shut off services.

On April 9, 2019, the trial court issued an opinion and order granting defendant's motion for summary disposition. The court opined that plaintiff failed to comply with the statutory requirements of MCL 123.165 and MCL 141.121(3) that he file both a lease and water affidavit with the defendant for each leasehold period in order to avoid liability for charges and a lien on the property. The court further determined that defendant was statutorily required to place liens

on the Linwood and Beechwood properties as security for the collection of the water arrearages, and that the placement of the liens on the tax rolls was proper. This appeal followed.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition.[1] *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "When deciding a motion for summary disposition under [MCR 2.116(C)(10)], a court must consider in the light most favorable to the nonmoving party the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006). Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

"Questions of law, including statutory interpretation, are reviewed de novo." *Kuhlgert v Mich State Univ*, 328 Mich App 357, 371; 937 NW2d 716 (2019). This Court's primary goal in statutory interpretation is to give effect to the intent of the Legislature, as conveyed through the plain language of the statute. *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019). "When the language of the statute is clear and unambiguous, judicial construction is not permitted and this Court must give the words their plain and ordinary meaning." *Buckmaster v Dep't of State*, 327 Mich App 469, 475; 934 NW2d 59 (2019). "This Court must avoid interpreting a statute in a way that would make any part of it meaningless or nugatory." *Maples v Michigan*, 328 Mich App 209, 218; 936 NW2d 857 (2019). In addition, "[w]hen two statutes cover the same general subject, they must be construed together to give reasonable effect to both, if at all possible." *Buckmaster*, 327 Mich App at 475 (quotation marks and citation omitted).

### B. ANALYSIS

Plaintiff argues that that trial court erred in its interpretation of MCL 123.165 and MCL 141.121(3). We disagree.

---

[1] The trial court did not identify which subrule or subrules it relied on to grant defendant's motion. Nonetheless, the only rule applicable to this appeal is MCR 2.116(C)(10) because plaintiff does not challenge the trial court's ruling regarding governmental immunity, and the parties and trial court relied on evidence outside of the pleadings. See *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 776; 910 NW2d 666 (2017) (reviewing denial of summary disposition under MCR 2.116(C)(10) where "resolution of the motion required consideration of evidence outside the pleadings").

MCL 123.165 pertains to municipal water and sewage liens. It provides:

The lien created by this act[2] shall, after June 7, 1939, have priority over all other liens except taxes or special assessments whether or not the other liens accrued or were recorded before the accrual of the water or sewage system lien created by this act. *However, this act shall not apply if a lease has been legally executed, containing a provision that the lessor shall not be liable for payment of water or sewage system bills accruing subsequent to the filing of the affidavit provided by this section.* An affidavit with respect to the execution of a lease containing this provision shall be filed with the board, commission, or other official in charge of the water works system or sewage system, or both, and 20 days' notice shall be given by the lessor of any cancellation, change in, or termination of the lease. The affidavit shall contain a notation of the expiration date of the lease. [Emphasis added.]

The second statutory provision, MCL 141.121(3), is from the Revenue Bond Act (RBA), MCL 141.101 *et seq.*, and provides:

Charges for services furnished to a premises may be a lien on the premises, and those charges delinquent for 6 months or more may be certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered, and the charges shall be collected and the lien shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes. The time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien shall be prescribed by the ordinance adopted by the governing body of the public corporation. *However, in a case when a tenant is responsible for the payment of the charges and the governing body is so notified in writing, the notice to include a copy of the lease of the affected premises, if there is one, then the charges shall not become a lien against the premises after the date of the notice.* In the event of filing of the notice, the public corporation shall render no further service to the premises until a cash deposit in a sum fixed in the ordinance authorizing the issuance of bonds under this act is made as security for the payment of the charges. In addition to any other lawful enforcement methods, the payment of charges for water service to any premises may be enforced by discontinuing the water service to the premises and the payment of charges for sewage disposal service or storm water disposal service to a premises may be enforced by discontinuing the water service, the sewage disposal service, or the storm water disposal service to the premises, or any combination of the services. The inclusion of these methods of enforcing the payment of charges in an ordinance adopted before February 26, 1974, is validated. [Emphasis added.]

_____

[2] MCL 123.162 grants a municipality operating a water distribution or sewage system a lien on premises to which services are provided as security for payment of charges.

In construing statutes that relate to the same subject matter, the terms of the relevant provisions must be read *in pari materia* and construed, whenever possible, in a manner that avoids conflict. *Parise v Detroit Entertainment, LLC*, 295 Mich App 25, 27; 811 NW2d 98 (2011). However, "when two applicable statutory provisions conflict, the one that is more specific to the subject matter prevails over the provision that is only generally applicable." *Pike v Northern Mich Univ*, 327 Mich App 683, 693; 935 NW2d 86 (2019). "[T]he rules of statutory construction also provide that a more recently enacted law has precedence over the older statute," particularly when the more specific statute is also the most recent of the two statutes. *Parise*, 295 Mich App at 28 (quotation marks and citation omitted; alteration in original).

The RBA "authorized a locality to issue a limited type of bond for public improvements that would be repaid through revenue generated solely from the public improvement financed by the bond." *Coal Protecting Auto No-Fault v Michigan Catastrophic Claims Ass'n*, 317 Mich App 1, 27–28; 894 NW2d 758 (2016). Water supply and sewer systems are among the public improvements authorized under the RBA. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 125-126; 892 NW2d 33 (2016). A municipality *may* effectuate a lien on the premises to which the services have been provided to collect charges for those services. Charges that have been delinquent for at least six months may be "certified annually to the proper tax assessing officer or agency who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered . . . ." MCL 141.121(3). The RBA grants the municipality discretion as to whether to treat the delinquent charges as liens against the service property except where the tenant has the responsibility to pay those charges. *NL Ventures VI Farmington, LLC v Livonia*, 314 Mich App 222, 234; 886 NW2d 772 (2016). In such cases this discretion is limited as follows:

> [I]n a case when a tenant is responsible for the payment of the charges and the governing body is so notified in writing, the notice to include a copy of the lease of the affected premises, if there is one, then the charges shall not become a lien against the premises after the date of the notice. In the event of filing of the notice, the public corporation shall render no further service to the premises until a cash deposit in a sum fixed in the ordinance authorizing the issuance of bonds under this act is made as security for the payment of the charges. [MCL 141.121(3).]

We note that additional statutory provisions concerning municipal water and sewage liens were also enacted by 1939 PA 178, MCL 123.161 *et seq*. *NL Ventures VI Farmington*, 314 Mich App at 228. Under MCL 123.162, "A municipality that has operated or operates a water distribution system or a sewage system . . . has as security for the collection of water or sewage system rates . . . a lien upon the house or other building and upon the premises . . . to which the sewage system service or water was supplied." Unlike the lien authorized under the RBA, the lien authorized by MCL 123.162 is mandatory as opposed to the discretionary lien under MCL 141.121(3). *NL Ventures VI Farmington, LLC*, 314 Mich App at 229-230. "This lien becomes effective immediately upon the distribution of the water or provision of the sewage system service to the premises or property supplied, but shall not be enforceable for more than 5 years after it becomes effective." MCL 123.162.

Similar to MCL 141.121(3), the later-enacted statutory scheme also provides a mechanism for lessors to avoid liens for delinquent charges owed by a lessee. *NL Ventures VI Farmington*, 314 Mich App at 229. In pertinent part, MCL 123.165 provides:

[T]his act shall not apply if a lease has been legally executed, containing a provision that the lessor shall not be liable for payment of water or sewage system bills accruing subsequent to the filing of the affidavit provided by this section. An affidavit with respect to the execution of a lease containing this provision shall be filed with the board, commission, or other official in charge of the water works system or sewage system, or both, and 20 days' notice shall be given by the lessor of any cancellation, change in, or termination of the lease. The affidavit shall contain a notation of the expiration date of the lease.

Because these statutes relate to the same subject matter, they must be read *in pari materia* "to effectuate the legislative purpose as found in harmonious statutes." *Parise*, 295 Mich App at 27 (quotation marks and citation omitted). Both MCL 123.165 and MCL 141.121(3) clearly permit a lessor to avoid a lien arising from a tenant's nonpayment of charges for which the tenant is responsible. Plaintiff argues that the trial court erred in its interpretation of MCL 123.165 and MCL 141.121(3) by requiring a new affidavit for each leasehold period contrary to the explicit language of the statute. We disagree.

Each municipality issuing revenue bonds or operating a water and sewer system has the obligation to maintain the integrity of those bonds and secure payments for system services by complying with state mandates regarding the payments for services rendered. The default security is a lien against the property to which those services were rendered. A lessor who desires to claim the statutory exception to this default process set forth in MCL 123.165 must take affirmative steps. *NL Ventures VI Farmington*, 314 Mich App at 239. First, the lessor must execute a lease providing that the lessor is not liable for charges accruing after an affidavit concerning the tenant's responsibility for charges is filed. MCL 123.165. Second, the lessor must file an affidavit with "the board, commission, or other official in charge of the water works system or sewage system," and the affidavit must identify the expiration date of the lease. *Id*. After complying with these requirements, the lessor's property is exempt from the mandatory lien that arises by operation of law under MCL 123.162. See MCL 123.165. The affidavit apprises the municipality of two things: an agreement between the landlord and tenant regarding the responsibility for water and sewage service, and the expiration date for that agreement. Once it is in receipt of an affidavit, the municipality has the obligation to determine the appropriate security to be charged to the lessee for the leasehold period. The owner's exemption from lien has a beginning and ending period. Simply put, when the lease term ends so does the exemption from lien. From the lease expiration date forward, all charges for water and service are once again a lien against the property. Because the lien exemption is inextricably tied to the lessor's lack of direct liability for charges, it can be reasonably inferred that the exemption set forth in MCL 123.165 and the affidavit establishing entitlement to the exemption both expire along with the lease.[3]

---

[3] The portion of MCL 123.165 that requires the lessor to notify the board, commission, or other applicable official "of any cancellation, change in, or termination of the lease" supports this interpretation. It again suggests that the Legislature intended the exemption to exist concomitant with the lease provision relieving the lessor from liability for charges incurred by the tenant.

MCL 141.121(3) only states that charges "shall not become a lien against the premises" when the governing body "is notified in writing" that the tenant is responsible for payment of the charges. MCL 141.121(3). The written notice must "include a copy of the lease of the affected premises, if there is one . . . ." *Id*. Although MCL 141.121(3) places less emphasis on the expiration of the lease agreement, it still requires that "a tenant is responsible for the payment of the charges . . . ." *Id*. Again, a tenant's responsibility and the corresponding owner's exemption from lien for such charges arise by virtue of a contractual agreement. When the agreement expires, the tenant's responsibility ends and the owner/landlord's exemption from a lien against the property also ends. Reading MCL 141.121(3) and MCL 123.165 *in pari materia*, it can reasonably be inferred that the lien exemption in MCL 141.121(3) was intended to apply only during the term of the lease under which the tenant assumed responsibility for the charges. Furthermore, to the extent that a conflict exists between MCL 141.121(3) and MCL 123.165 concerning the effect of the expiration of the lease, MCL 123.165 controls because it was enacted more recently and more specifically addresses municipal water and sewer liens, while the RBA applies to a variety of public improvements. *Parise*, 295 Mich App at 27-28.

This Court must construe statutes reasonably, "keeping in mind the purpose of the act, and to avoid absurd results." *Rogers v Wcisel*, 312 Mich App 79, 87; 877 NW2d 169 (2015). MCL 123.161 *et seq*., was enacted " 'to provide for the collection of water or sewage system rates, assessments, charges, or rentals; and to provide a lien for water or sewage system services furnished by municipalities . . . .' " *NL Ventures VI Farmington*, 314 Mich App at 228 (citation omitted). The RBA was enacted for the purpose of creating " 'full and complete additional and alternate methods' " for public corporations to exercise the powers authorized by the RBA, including the powers to operate and finance public improvements. *Id*. at 231-232, citing MCL 141.102 and MCL 141.106. Under plaintiff's interpretation of these statutes, a landowner could lease a property to a tenant for a short period of time pursuant to an agreement requiring the tenant to pay charges and continue to receive the benefit of exemption from liens under MCL 123.165 and MCL 141.121(3) in perpetuity as long as the property owner filed an initial affidavit with the appropriate governmental official. This result would frustrate the purpose of these legislative enactments by interfering with a municipality's ability to secure payment for services furnished to properties that were once exempt from liens even after those properties no longer meet the requirements for exemption. To be entitled to protection from liens beyond the date the subject lease expires, the lessor must provide the applicable governmental official with a new notice regarding the terms of subsequent leases and, under MCL 123.165, that notice must be in the form of an affidavit that identifies the expiration date of the lease.

Plaintiff admitted that he filed only one water affidavit for each of his rental properties. The affidavit for the Linwood Property indicated that plaintiff's lease with the Sauros ended on October 1, 2014, and the affidavit for the Beechwood Property indicated that plaintiff's lease with Smith and Woodson expired on April 1, 2016. The delinquent charges at issue for the Linwood Property accrued in April and May 2016, after the initial lease and affidavit expired. The delinquent charges at issue for the Beechwood Property accrued in May 2017, again after the initial lease and affidavit expired. Because the relevant charges were incurred after the respective leases and affidavits expired, defendant was not prohibited from imposing a lien for those charges. The fact that plaintiff may have filed, or attempted to file, subsequent leases with defendant is of no consequence because MCL 123.165 explicitly requires the lessor who wishes to avoid a lien for a tenant's charges to file an affidavit, which plaintiff did not do.

Plaintiff also argues that, regardless of whether he complied with the statutory filing requirements, defendant could not lawfully transfer the charges to the tax roll because the charges involved in this case had been delinquent for less than six months. We agree.

This issue was raised below, but not addressed by the trial court. "Generally, an issue must have been raised before, and addressed and decided by, the trial court to be preserved for appellate review." *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013). However, "this Court may overlook preservation requirements where failure to consider the issue would result in manifest injustice, if consideration of the issue is necessary to a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002) (internal citations omitted). The last of these considerations applies here.

Both statutory schemes at issue in this case authorize a lien in favor of the municipality for unpaid charges unless the landlord exemption applies. MCL 123.162; MCL 123.165; MCL 141.121(3). See also *NL Ventures VI Farmington*, 314 Mich App at 230, 233 (discussing mandatory lien under MCL 123.162 and permissive lien under MCL 141.121(3)). Both statutory schemes also address methods by which the municipality can enforce its lien. However, neither include any language "mandating immediate placement on the tax rolls." To the contrary, the plain language of MCL 141.121(3) refers to a minimum delinquency criteria—delinquency for "6 months or more"—before that enforcement mechanism can be used. MCL 123.161 *et seq*., does not directly address the placement of past-due charges on the tax roll and, instead, broadly permits the statutory lien to be "enforced by a municipality in the manner prescribed in the charter of the municipality, by the general laws of the state providing for the enforcement of tax liens, or by an ordinance duly passed by the governing body of the municipality." MCL 123.163. The parties have not identified any charter provision, ordinance, or general law of the state—outside of the RBA and MCL 123.161 *et seq*.—that are relevant to defendant's enforcement of its lien.

According to defendant's payment registers, $129.11 in delinquent charges were transferred to plaintiff's tax bill for the Linwood Property on June 2, 2016, and $77.02 was transferred to plaintiff's tax bill for the Beechwood Property on May 30, 2017, or May 31, 2017. Although defendant may have been entitled to immediate liens against the respective properties as security for the payment of these charges, MCL 141.121(3) barred defendant from certifying past-due charges for placement on the tax roll until the charges had been delinquent for at least 6 months. Defendant violated this restriction by transferring the charges to plaintiff's tax bills less than 60 days after the charges accrued. Consequently, the trial court erred by granting summary disposition in favor of defendant on plaintiff's quiet title and writ of mandamus claims as it relates to defendant's procedure for placement of the arrears on the tax rolls.[4]

Plaintiff additionally argues that defendant's actions of placing the water liens on the tax roll were preempted by state law because MCL 141.121(3) prohibits the charges from becoming a lien against the premises when the governmental unit is notified of the tenant's responsibility for

---

[4] We note that this conclusion does not apply to plaintiff's slander of title claim, which was dismissed on the basis of governmental immunity, rather than the parties' respective compliance with the statutory provisions, and was not appealed to this Court.

the charges. Plaintiff waived appellate review of this issue by arguing before the trial court that preemption principles were inapplicable. "A party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal." *Grant v AAA Mich/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006). By concluding that preemption was not an issue in this case, plaintiff waived review of this issue. *Id*. at 148-189. Regardless, plaintiff's preemption claim does not affect the disposition of this appeal. Although the trial court made passing reference to the fact that defendant cancelled or voided the plaintiff's water affidavits, the fact remains that the only affidavits plaintiff filed referred to leases that expired before the relevant charges accrued.

In sum, MCL 123.165 and MCL 141.121 require a landlord to file a new water affidavit with each lease in order to prevent charges for water arrears from becoming the responsibility of the landlord and a lien against the property. In this case, there is no genuine issue of material fact that defendant had statutory authority to place the liens against plaintiff's rental properties because for both properties, plaintiff failed to file a new water affidavit with each subsequent lease. However, defendant was without authority to transfer outstanding water charges to the tax rolls before the expiration of the statutory six-month period. Thus, defendant's procedure for entering the lien on the tax roll was unlawful. Accordingly, this matter is remanded to the trial court for the limited task of refunding plaintiff for charges paid as a result of the liens being unlawfully placed on the tax rolls before the expiration of the statutory six-month period.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher
/s/ Thomas C. Cameron