LAURENCE G WOLF CAPITAL MANAGEMENT TRUST
v CITY OF FERNDALE

Docket No. 262721. Submitted December 7, 2005, at Detroit. Decided
December 20, 2005, at 9:00 a.m. Leave to appeal sought.

The Laurence G. Wolf Capital Management Trust and Laurence G.
Wolf, individually and as trustee, brought an action in the Oakland
Circuit Court against the city of Ferndale and three city executive
officials. The complaint alleged tortious interference with the
plaintiffs' relationship with AT&T Wireless Services, Inc., and
with prospective business relationships between the plaintiffs and
other cellular services providers. The plaintiffs had negotiated
with AT&T for the construction and lease of a cellular communi-
cations antenna on the plaintiffs' building. The city, however,
ultimately entered into an agreement with AT&T to put a cellular
tower on nearby city-owned property. The court, Edward Sosnick,
J., granted the defendants summary disposition on the grounds of
governmental immunity, concluding that the proprietary function
exception to governmental immunity found in MCL 691.1413 did
not apply to an action for prospective economic injury. The
plaintiffs appealed.

The Court of Appeals *held*:

The plaintiffs pleaded a cause of action in avoidance of govern-
mental immunity, and the trial court erred by granting summary
disposition to the defendants. A governmental agency engaged in
the exercise or discharge of a governmental function, which is an
activity that is expressly or impliedly mandated by constitution,
statute, local charter or ordinance, or other law, is generally
immune from tort liability. Narrowly construed exceptions to this
immunity exist, however, such as the proprietary function excep-
tion of MCL 691.1413 for actions to recover for bodily injury or
property damage arising out of the governmental agency's perfor-
mance of a proprietary function. The issue in this case is not
whether a proprietary function was involved, but whether the
plaintiffs' tortious interference claims constitute an action to
recover for property damage. The plain and ordinary meaning of
the phrase "property damage" in the statute includes injury or
harm to a person's rights or interests associated with an object.

The property damage the plaintiffs alleged was the harm or injury to their right of lawful, unrestricted use and enjoyment of their res for the particular business purpose that they had negotiated and the harm to their right to enjoy income derived from their res. Physical injury to tangible property is not required under the exception. A measure of the plaintiffs' damages is the income the plaintiffs lost from the business deal that was not completed allegedly because of the defendants' actions, provided that the damages can be proven with reasonable certainty.

Reversed.

GOVERNMENTAL IMMUNITY — PROPRIETARY FUNCTION EXCEPTION — PROPERTY DAMAGE.

Governmental immunity does not apply to an action to recover for bodily injury or property damage arising out of a governmental agency's performance of a proprietary function; physical injury to tangible property is not required for the exception to apply, and property damage may consist of injury or harm to a person's rights or interests associated with an object, including harm or injury to a person's right of lawful, unrestricted use and enjoyment of the person's res for a particular business purpose negotiated and harm to the person's right to enjoy income derived from that res (MCL 691.1413).

*Kickham Hanley P.C.* (by *Timothy O. McMahon* and *Christopher S. Olson*) for the plaintiffs.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *T. Joseph Seward* and *Karen M. Daley*), for the defendants.

Before: CAVANAGH, P.J., and COOPER and DONOFRIO, JJ.

CAVANAGH, P.J. Plaintiffs appeal as of right the trial court's summary dismissal of their tortious interference claims on the grounds that they were barred by governmental immunity, MCL 691.1407. We reverse.

On July 28, 2003, plaintiffs, a trust and a trustee, filed their complaint against defendants, the city of Ferndale, and Ferndale's director of development, Marsha Scheer; mayor, Robert Porter; and city manager,

Thomas Barwin. Plaintiffs averred in their complaint that the trust owned the Ferndale Center Building (Building), located on Nine Mile Road and Woodward Avenue, which included prime roof space for constructing a cellular communications antenna. Consistently with that purpose, in 1999, an agreement was reached with AT&T Wireless Services, Inc., for such a lease and construction, but the city of Ferndale denied their request for a necessary variance to allow its installation. Plaintiffs filed an action in federal court, alleging a violation of § 332 of the Telecommunications Act of 1996, 47 USC 332, that was successful, and defendant was ordered to issue a nonuse variance. See *Laurence Wolf Capital Mgt Trust v City of Ferndale*, 318 F Supp 2d 522, 524 (ED Mich, 2004). However, plaintiffs averred, during that pending litigation the city of Ferndale amended its ordinance; it removed the prohibition against multiple cellular towers, but added a special use permit requirement. Once again, negotiations between plaintiffs and AT&T commenced, but AT&T subsequently declined to enter into a lease agreement. Instead, AT&T entered into a lease agreement with the city of Ferndale "to place a large cell tower on city owned property just blocks from the location of the Building." Thereafter, plaintiffs brought the instant action, alleging tortious interference with their business relationship with AT&T and tortious interference with prospective business relationships between them and other cellular services providers.

On October 7, 2003, defendants filed their motion to dismiss pursuant to MCR 2.116(C)(7), on the grounds that they were entitled to governmental immunity. See MCL 691.1407. Defendants argued that the city of Ferndale was engaged in a governmental function, i.e., the enforcement of a city ordinance, when it denied plaintiffs' request for a "special use variance" and that

the defendant city officials, as the highest executive officials, were entitled to absolute immunity. See MCL 691.1407(5). Plaintiffs responded to defendants' motion, arguing that the city was not entitled to immunity because when it sought to usurp plaintiffs' business opportunities for the city's own pecuniary gain, it was engaged in a proprietary function, not a governmental function. Plaintiffs argued that the city's leasing of space on a city-owned massive cellular tower to commercial telecommunications providers, after engaging in tortious conduct to gain the commercial advantage over plaintiffs, constituted a proprietary function for which governmental immunity did not apply. See MCL 691.1413. With regard to the individual defendants, plaintiffs argued that they were not entitled to immunity. Defendants disagreed in their reply brief, arguing that the proprietary function exception did not apply because plaintiffs did not allege bodily injury or property damage arising out of the performance of an alleged proprietary activity. And, contrary to plaintiffs' claims, the individual defendants were the highest executive officials at various levels of the city government. On December 11, 2003, the trial court issued its opinion and order granting defendants' motion for summary disposition with regard to the dismissal of the city's mayor only, holding that further factual development was required concerning the dismissal of the other defendants.

On July 20, 2004, defendants filed their second motion for summary disposition and argued that they were entitled to summary dismissal because (1) plaintiffs could not establish either tortious interference claim and (2) the proprietary function exception to governmental immunity did not apply since plaintiffs did not seek recovery for bodily injury or property damage arising out of the performance of a proprietary

function, as required by MCL 691.1413. Plaintiffs opposed the motion, arguing that they could establish that defendants acted improperly to interfere with their established and potential business relationships and that their claims were not barred by governmental immunity because they suffered property damage in the form of lost business as a result of the interference.

The trial court ultimately agreed with defendants and dismissed the case. Relying on *Louis J Eyde Ltd Family Partnership v Meridian Charter Twp*, unpublished opinion per curiam of the Court of Appeals, issued June 17, 2004 (Docket No. 248312) (*Eyde*), the trial court held that there was a genuine issue of material fact with respect to the tortious interference claims, but concluded that defendants were immune from liability because the proprietary function exception did not apply to this "action for prospective economic injury." In other words, the loss of a business expectancy was not "property damage" within the contemplation of MCL 691.1413. Plaintiffs' motion for reconsideration was denied, and this appeal followed.

Plaintiffs argue that defendants were not entitled to immunity because their tortious interference claims were actions for "property damage" within the proprietary function exception. After review de novo, construing the contents of the complaint as true and considering the documentary evidence in a light most favorable to plaintiffs, we agree. See MCR 2.116(C)(7); *Maiden v Rozwood*, 461 Mich 109, 118-119; 597 NW2d 817 (1999).

Generally, governmental agencies "engaged in the exercise or discharge of a governmental function," i.e., "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law," are immune from tort liability.

MCL 691.1401(f) and 691.1407(1). But, there are some narrowly construed exceptions to immunity. *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 614; 664 NW2d 165 (2003); *Ballard v Ypsilanti Twp*, 457 Mich 564, 569; 577 NW2d 890 (1998). At issue in this case is the proprietary function exception, which is set forth in MCL 691.1413 and provides:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees.

The issue here is not whether a proprietary function was involved, but whether plaintiffs' tortious interference claims constitute an action to recover for "property damage" within the contemplation of MCL 691.1413. After review de novo of this question of law, we conclude that they do. See *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

Ascertaining and giving effect to the intent of the Legislature is the primary goal of statutory interpretation. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). We first examine the specific language of the statute to determine that intent. *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004). The statute's words or phrases are accorded their plain and ordinary meaning. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). If the statute is unambiguous, it must be enforced as written. *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).

First, we must determine the plain and ordinary meaning of the phrase "property damage" because it is not defined in the statute. It appears that the phrase has not previously been subjected to such judicial scrutiny, but we may consult dictionary definitions and look to accepted legal definitions for guidance. See *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002); *People v Lee*, 447 Mich 552, 558; 526 NW2d 882 (1994). The definition of "property" includes "ownership; right of possession, enjoyment, or disposal, [especially] of something tangible." *Random House Webster's College Dictionary* (1997). A very similar but more expansive definition of "property" is found in 63C Am Jur 2d, Property, § 1, pp 66-68, which provides:

> As a matter of legal definition, "property" refers not to a particular material object but to the right and interest in an object. "Property" in a thing does not consist merely in its ownership or possession, but also in the lawful, unrestricted right of its use, enjoyment, and disposal. In its precise legal sense, property is nothing more than a collection of rights. . . .
>
> *         *         *
>
> In contemporary jurisprudence, "property" refers to the various incorporeal ownership rights in a res, such as the right to possess, to enjoy the income from, to alienate, or to recover ownership from one who has improperly obtained title to the res, as well as to the actual physical object of these rights.

"Damage" is defined as "injury or harm that reduces value, usefulness, etc." *Random House Webster's College Dictionary* (1997). Combining the definitions, then, the plain and ordinary meaning of the phrase "property damage" includes injury or harm to one's rights or interests associated with an object.

In their complaint, plaintiffs alleged tortious interference, which has been described as the "intentional invasion of, or interference with, property rights causing injury without just cause or excuse." 45 Am Jur 2d, Interference, § 1, p 273. Specifically, plaintiffs alleged tortious interference with an established business relationship, as well as tortious interference with prospective business advantages, that resulted in property damage in the form of lost business. Like that of the plaintiffs in *Eyde*, plaintiffs' theory was that defendants used their otherwise legitimate governmental function of denying plaintiffs' requested use of their property "for the improper purpose of advancing their own proprietary interests of having exclusive right to the financial benefit of an agreement to erect a communications tower." *Eyde, supra*, slip op at 3.

But the trial court rejected plaintiffs' claim that the loss of business and associated income resulting from defendants' tortious interference constituted property damage, instead holding that the claimed damages were for prospective economic injury. We disagree with that conclusion. Plaintiffs' alleged "property damage" was the harm or injury to their right of lawful, unrestricted use of their res for the particular business purpose that they had negotiated. That the loss of the business deal resulted in lost income is relevant for the purpose of attempting to measure the resulting damages. See, e.g., *Citizens for Pretrial Justice v Goldfarb*, 415 Mich 255, 268; 327 NW2d 910 (1982) ("Pecuniary losses are an element of damages that may flow from an injury to persons or property or breach of contract."). Stated another way, if plaintiffs' alleged property damage was structural damage to their building, one measure of the damages might include the loss of income resulting from having to close down the building. But, the "property damage" in that scenario includes the harm or

injury to the right to use and enjoy the building; one method of measuring the damage, i.e., quantifying the loss, is to calculate the associated loss of income. The same is true in plaintiffs' case. A measure of plaintiffs' damages is the income plaintiffs lost from the business deal that was not completed allegedly because of defendants' actions, provided that the damages can be proven with reasonable certainty. See *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 108; 535 NW2d 529 (1995). Defendants seem to argue that there must be physical injury to tangible property for there to be "property damage." We cannot rewrite the statute. See, e.g., *Stringer v Bd of Trustees of Edward W Sparrow Hosp*, 62 Mich App 696, 699-700; 233 NW2d 698 (1975).

To summarize, plaintiffs alleged that defendants tortiously interfered with their established and prospective business relationships by wrongfully denying plaintiffs' requested use of their property so that defendants could intercept plaintiffs' negotiated business deal with AT&T, which resulted in plaintiffs' suffering damages, including pecuniary losses. In other words, defendants wrongfully exercised their governmental power during the course of, and in furtherance of, performing a proprietary function, i.e., leasing space to AT&T for a cellular tower, which gave rise to plaintiffs' suffering property damage, including harm to their right of lawful and unrestricted use of their res, as well as harm to their right to enjoy income derived from their res. We express no opinion on the merit or likely success of plaintiffs' claims.

We are mindful of our duty to narrowly construe governmental immunity exceptions and of the fact that the purpose of the exceptions is not to place governmental agencies on an equal footing with private tortfeasors. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich

143, 148-150, 158-159; 615 NW2d 702 (2000). Nevertheless, under circumstances like those presented in this case, defendants cannot escape scrutiny for their governmental actions that have a direct and beneficial effect on their proprietary endeavors by hiding under the shelter of immunity. In conclusion, plaintiffs pleaded a cause of action in avoidance of governmental immunity and, accordingly, we reverse the trial court's dismissal of this case.

Reversed.