# STATE OF MICHIGAN

# COURT OF APPEALS

---

KEVIN MODIN,

       Plaintiff-Appellant,

v

WEST BRANCH REGIONAL MEDICAL
CENTER and THOMAS OESCH,

       Defendants-Appellees.

UNPUBLISHED
June 2, 2015

No. 320452
Ogemaw Circuit Court
LC No. 12-658488-CD

---

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

The circuit court summarily dismissed plaintiff Kevin Modin's tort claims against his employer and individual supervisor based on their decision to terminate plaintiff's employment and report his conduct to the police. Plaintiff's former employer is a government-owned hospital and enjoyed immunity from suit. Moreover, plaintiff's evidence raised no genuine issues of material fact regarding his supervisor's tort liability and to rebut defendants' evidence that the supervisor acted in good faith, thereby failing to overcome the supervisor's claim of individual immunity. We affirm.

## I. BACKGROUND

Plaintiff was employed by defendant West Branch Regional Medical Center as an x-ray technician from April 10, 2006 until January 31, 2011. On Friday, January 28, 2011, plaintiff made three threatening comments in the presence of his coworker, Rachelle Izworski. The final comment was overheard by another employee, Wanda Vincent. Specifically, plaintiff, who had a reputation for owning multiple firearms, stated: "I'm going to bring a gun into work and take some people out," "I'm going to bring in an AK-47 and shoot up the place," and "I guess I will have to bring a gun into work and show them I mean business or a fake gun just to scare them." Izworski reported these comments to plaintiff's supervisor, defendant Thomas Oesch, who brought his concerns to the medical center's human resources department and safety committee.

On Monday, January 31, 2011, several medical center officials convened to discuss plaintiff's comments. The group decided to terminate plaintiff's employment and report the matter to the police. Law enforcement officers delivered the termination notice to plaintiff at his home and questioned him about his comments. Plaintiff allegedly "admitted that he did make a

comment on the date in question" and stated that "he understood why the hospital would be concerned." Plaintiff claimed he was simply venting during the course of a bad day. Plaintiff voluntarily surrendered his 21 firearms to the officers and signed an acknowledgment that he received the termination notice.

The prosecutor subsequently charged plaintiff with the felony offense of making a threat of terrorism, MCL 750.543m. Following plaintiff's arrest, he filed a grievance with his union protesting his termination. Union representatives advised plaintiff that they would await the resolution of his criminal charges to determine if his discharge was legitimate. Plaintiff eventually entered an agreement under which the prosecutor promised "to delay the prosecution in this matter for 12 months" and then dismiss the felony charges, if plaintiff committed no other criminal offenses or serious traffic violations, sought "a mental health assessment and follow[ed] all the directives of his mental health provider," permitted his attorney to retain possession of his firearms until the close of the 12-month period, and refrained from entering the medical center. Plaintiff agrees that through this agreement he pleaded to a reduced misdemeanor charge. The union then informed plaintiff that it would not pursue his grievance with the medical center.

Plaintiff filed suit against Oesch and the medical center, challenging his termination and their pursuit of criminal charges against him. Plaintiff claimed that Vincent informed him that she had not heard his alleged comments but that Oesch threatened her employment if she declined to make a statement. Plaintiff implied that Izworski had motive to lie because she gained additional work hours after his termination. Plaintiff further cited a past incident of workplace violence and threats by another employee whom the medical center had thereafter retained on staff as an example of disparate treatment. Based on these allegations, plaintiff raised claims of tortious interference with business expectations, breach of his collective bargaining agreement, malicious prosecution, and abuse of process. Defendants sought summary disposition, claiming the protection of governmental immunity and citing legal and factual deficiencies in the complaint. The circuit court granted defendants' motion and this appeal followed.[1]

## II. ANALYSIS

We review a trial court's decision on a motion for summary disposition de novo. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 591; 773 NW2d 271 (2009). We must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. *Id.* The motion should be granted only if no factual development could possibly justify recovery. *Id.*

---

[1] Plaintiff does not challenge the dismissal of his collective bargaining claim.

A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).]

In reviewing a summary disposition motion based on governmental immunity under MCR 2.116(C)(7), we must consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "If the pleadings or other documentary evidence reveal no genuine issues of material fact, the court must decide as a matter of law whether the claim is statutorily barred." *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000). If, however, a genuine issue of material fact exists such that factual development could provide a basis for recovery, summary disposition is inappropriate. *Guerra v Garratt*, 222 Mich App 285, 289; 564 NW2d 121 (1997).

## A. GOVERNMENTAL IMMUNITY

The circuit court properly dismissed the direct-liability claims against the medical center on governmental immunity grounds. Pursuant to MCL 691.1407(1), "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function," unless the plaintiff's claims fall within a statutory exception to the immunity granted by law. The medical center is a government owned and operated hospital fitting the definition of a governmental agency for purposes of MCL 691.1407(1). And plaintiff did not plead his direct-liability claims in avoidance of governmental immunity. "The six statutory exceptions to governmental immunity [are]: 'the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3).' " *Hannay v Dep't of Transp*, 497 Mich 45, 60 n 34; 860 NW2d 67 (2014), quoting *Wesche v Mecosta Co Road Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008). The "governmental-hospital exception" applies only when suit is brought in connection with the provision of "medical care or treatment," MCL 691.1407(4), a situation not present in this case. Plaintiff cited no other immunity exception under which the medical center could be liable.

Oesch, however, is a governmental actor, not an agency. His claim of governmental immunity is therefore judged by different standards. Plaintiff raised claims of intentional torts against Oesch (and against the medical center on respondeat superior grounds). Pursuant to MCL 691.1407(3), we must determine whether Oesch would have enjoyed governmental

immunity for these intentional torts under the common-law. *Odom*, 482 Mich at 472-473. Immunity is extended for intentional tort liability if:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial. [*Id.* at 480.]

Oesch was acting in the course of his employment when he decided, along with other medical center officials, to terminate plaintiff's employment and report his conduct to the police. Oesch was plaintiff's supervisor and it was his duty to ensure that plaintiff obeyed the medical center's code of conduct. Oesch's acts were also discretionary.

> A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. Ministerial acts constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. [*Id.* at 475-476 (quotation marks and citations omitted).]

"Discretionary acts," on the other hand, "require personal deliberation, decision and judgment." *Id.* at 476 (quotation marks and citation omitted). Oesch clearly exercised his judgment rather than obeyed orders in determining the best response to plaintiff's alleged comments. The more difficult question is whether plaintiff created a genuine issue of material fact that Oesch acted with malice and not in good faith. We address that question in relation to plaintiff's individual claims.

## B. TORTIOUS INTERFERENCE

The circuit court did not err in dismissing plaintiff's tortious interference with a business relationship claim. Plaintiff contended that Oesch interfered with his business relationship with the medical center by reporting to human resources and the safety committee that plaintiff had threatened to bring a gun to work, resulting in his termination.

Tortious interference with a business relationship is "the intentional invasion of, or interference with, property rights causing injury without just cause or excuse." *Laurence G Wolf Capital Mgt Trust v City of Ferndale*, 269 Mich App 265, 272; 713 NW2d 274 (2005) (quotation marks and citation omitted). To establish such a claim, the plaintiff must prove: (1) "the existence of a valid business relationship or expectancy," (2) the defendant's knowledge of that relationship or expectancy, (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy," and (4) damages. *Mino v Clio Sch Dist*, 255 Mich App 60, 78; 661 NW2d 586 (2003) (citation omitted). Only the third element is disputed in this appeal.

To establish an actionable intentional interference, a plaintiff must show that the defendant intentionally committed a per se wrongful act or committed a lawful act "with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002) (quotation marks and citation omitted). "Where the defendant's actions were motivated by *legitimate business reasons*, its actions would not constitute improper motive or interference." *Mino*, 255 Mich App at 78 (emphasis added). To prove his claim, "the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *BPS Clinical Laboratories v Blue Cross & Blue Shield of Michigan*, 217 Mich App 687, 699; 552 NW2d 919 (1996).

Plaintiff has not rebutted the evidence that Oesch was motivated by legitimate business reasons in supporting termination of plaintiff's employment. Oesch acted on employee reports that plaintiff, whom he knew to own guns, threatened to bring a gun to work and shoot people. While plaintiff claims that Izworski lied and Vincent was coerced by Oesch into making a false report, Oesch's decisions were vindicated by the resolution of the criminal proceedings. Plaintiff pleaded guilty or nolo contendere[2] to a misdemeanor in relation to his threats. Plaintiff's acceptance of criminal liability negates his claim that Oesch's decision was unfounded. Summary disposition was therefore supportable on governmental immunity as well as factual grounds.

## C. MALICIOUS PROSECUTION

Plaintiff also claimed that Oesch, and the medical center as Oesch's employer, abused the legal system and acted with malice in seeking out his prosecution on terrorism charges.

To prove a malicious prosecution claim, a plaintiff must show: (1) a criminal proceeding initiated or continued by defendant against plaintiff; (2) termination of the proceeding in favor of the accused; (3) the absence of probable cause for the proceeding; and (4) malice or a primary purpose other than that of bringing an offender to justice. *Matthews v Blue Cross & Blue Shield of Michigan*, 456 Mich 365, 378; 572 NW2d 603 (1998).

Neither Oesch nor the medical center actually initiated the criminal prosecution; rather, Oesch reported a threat of violence by an employee to local law enforcement. In this regard, we find *Wilson v Sparrow Health Sys*, 290 Mich App 149; 799 NW2d 224 (2010), instructive. In *Wilson*, 290 Mich App at 151, the defendant athletic club conducted an internal investigation after a man exposed himself to two female lifeguards, and concluded that the plaintiff was the culprit. The defendant shared the results of its investigation when reporting the incident to the police. The plaintiff was innocent, however, and the culprit struck again, leading to the arrest and prosecution of the correct individual. *Id*. The plaintiff filed suit against the defendant athletic club, asserting negligence and defamation claims. *Id*. at 151-152. Although the present case involves an intentional court, this Court's analysis is analogous:

---

[2] It is unclear from the record in this civil matter which type of plea plaintiff entered in the separate criminal proceeding.

After defendants conducted a modest, preliminary internal investigation following complaints of a crime, they turned the matter over to the police. It was then in the hands of law enforcement officials to pursue the matter, and it was the prosecutor's decision whether the police had gathered sufficient evidence against Wilson to bring criminal charges.

When a citizen places information or a complaint in the hands of the police, even if the information is flawed, and then the police conduct their own investigation and, with the prosecutor, determine that there is probable cause to pursue the matter, that decision is entirely outside the authority or control of the private citizen. [*Id.* at 152-153 (citation omitted).]

Similarly, here, Oesch and the medical center merely placed the information gathered during the internal investigation into the hands of the police. The police conducted their own investigation and the prosecutor decided to levy criminal charges against plaintiff. Oesch and the medical center had no authority or control of the prosecutorial decision.

Moreover, the criminal proceedings did not terminate in plaintiff's favor; he pleaded to a crime. Plaintiff contends that the fact that he entered a plea does not necessarily mean that probable cause existed for the prosecution of the offense. We need not reach this element given that the criminal proceedings did not terminate in plaintiff's favor. In any event, the prosecution decided to charge plaintiff based on evidence uncovered during the police investigation: two separate witnesses reporting three threats of violence. Probable cause was created by the evidence, not plaintiff's plea. Accordingly, the circuit court properly determined that dismissal of plaintiff's malicious prosecution claim was warranted both under MCR 2.116(C)(7) and (10).

## D. ABUSE OF PROCESS

Plaintiff contends that Oesch abused the police investigatory process to pursue his vindictive motives against him. "To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v Dozorc*, 412 Mich 1, 30; 312 NW2d 585 (1981). Explained in greater detail:

"The gravamen of the misconduct for which the liability stated in this section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this section." [*Id.* at 30 n 18, quoting 3 Restatement Torts, 2d, § 682, comment a, p 474.]

A plaintiff may not merely state that a defendant had an ulterior motive. Rather, the plaintiff must show that the defendant demonstrated and acted upon his improper motive through "a corroborating act." *Vallance v Brewbaker*, 161 Mich App 642, 646; 411 NW2d 808 (1987).

Plaintiff failed to adequately plead an abuse-of-process claim, supporting summary disposition on legal and factual grounds. Plaintiff baldly asserted that Oesch used the police investigatory process to cause vexation, trouble, embarrassment, and damage, and claimed that Oesch should have known his report was false. Plaintiff has never explained why Oesch would harbor ill will against him. He has cited no corroborating act beyond the police report to support that Oesch maintained an ulterior motive. Although plaintiff explained a motive for Izworski to fabricate allegations against him, he has not explained why Oesch would do so. Plaintiff implies that the medical center's decision not to fire another employee after a violent workplace incident was evidence that Oesch and the medical center harbored an ulterior purpose to terminate him. But plaintiff has not tied Oesch to the decision-making process in that prior incident and has not presented any evidence from which the court could even conclude that the prior incident actually occurred. Accordingly, the circuit court properly dismissed this claim as well.[3]

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[3] As plaintiff could not create triable issues on the elements of his claims against Oesch, the circuit court also correctly dismissed his claims against the medical center based on vicarious liability.