# STATE OF MICHIGAN

# COURT OF APPEALS

NL VENTURES VI FARMINGTON, LLC,

Plaintiff-Appellee,

v

CITY OF LIVONIA,

Defendant-Appellant.

UNPUBLISHED
December 22, 2015

No. 323144
Wayne Circuit Court
LC No. 13-004863-CZ

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals the order granting summary disposition in favor of plaintiff, resulting in the invalidation of accumulated water and sewer charges and liens against plaintiff's real property. Defendant further appeals the trial court's denial of summary disposition in favor of defendant on plaintiff's remaining tort claims premised on governmental immunity and the failure to state a viable claim. We vacate the trial court's order and remand for further proceedings.

The factual and procedural history of this litigation is not disputed. Rather, this appeal is focused on the interpretation and interrelationship between various statutory schemes including: (a) MCL 123.161, *et seq.*, governing municipal water and sewage liens, (b) MCL 141.101, *et seq.*, comprising the Revenue Bond Act of 1933, and (c) Livonia Ordinances, § 13.08.010, *et seq.*, encompassing the city of Livonia's water rate ordinance chapter.

Defendant first contends the trial court erred in granting summary disposition in favor of plaintiff, resulting in the voiding and dismissal of defendant's liens for unpaid water bills incurred by Awrey Bakeries, LLC (Awrey) while a tenant on plaintiff's real property. Defendant argues that the trial court misconstrued and misinterpreted the relevant statutory provisions, and their interactions, in reaching its erroneous decision. Predictably, plaintiff lauds the trial court's decision and reasoning, emphasizing the correctness of the trial court's determination that defendant's failure to abide by or follow its own ordinance regarding the placement of water arrearages on the tax rolls necessitated the voiding of the liens and rendered them unenforceable.

Questions of statutory interpretation are reviewed de novo. *Omelenchuk v City of Warren*, 466 Mich 524, 527; 647 NW2d 493 (2002), overruled in part on other grounds *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004). A trial court's decision on a motion for summary

disposition is also reviewed de novo. *Fingerle v City of Ann Arbor*, 308 Mich App 318, 343; 863 NW2d 698 (2014).

> When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party. To overcome a motion brought under MCR 2.116(C)(7), the plaintiff must allege facts warranting the application of an exception to governmental immunity. If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law. [*Id.* (citations and quotation marks omitted).]

"A motion for summary disposition brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone. The purpose of such a motion is to determine whether the plaintiff has stated a claim upon which relief can be granted. The motion should be granted if no factual development could possibly justify recovery." *Beaudrie v Henderson*, 465 Mich 124, 129-130; 631 NW2d 308 (2001). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Ernsting v Ave Maria College*, 274 Mich App 506, 509-510; 736 NW2d 574 (2007). All reasonable inferences are to be construed in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Ernsting*, 274 Mich App at 509. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). "A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ." *Ernsting*, 274 Mich App at 510. Because the trial court's ruling is not premised on defendant's claim of governmental immunity and appears to rely on information garnered extraneous to the pleadings, we review pursuant to MCR 2.116(C)(10).

Based on the lack of published case law discussing the relevant statutory provisions, the most efficacious approach to unraveling the complexities of this issue requires a study of the actual statutory language involved in an attempt to determine how the provisions are to be applied in the circumstances of this case. The starting point is the recognition of certain, basic tenets of statutory construction.

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute itself. If the statutory language is unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed and further judicial construction is neither permitted nor required. Under the plain-meaning rule, courts must give the ordinary and accepted meaning to the mandatory word "shall" and the permissive word "may" unless to do so would frustrate the legislative intent as evidenced by other statutory language or by reading the

statute as a whole. [*Atchison v Atchison*, 256 Mich App 531, 535; 664 NW2d 249 (2003) (citations omitted).]

The statutory provisions pertaining to municipal water and sewage liens are encompassed in 1939 PA 178, MCL 123.161 *et seq.*, which indicates, as its purpose, "to provide for the collection of water or sewage system rates, assessments, charges, or rentals; and to provide a lien for water or sewage system services furnished by municipalities as defined by this act." The following provisions of the 1939 Act are relevant:

> *A municipality* which has operated or operates a water distribution system or a sewage system for the purpose of supplying water or sewage system services to the inhabitants of the municipality, *shall have as security for the collection of water or sewage system rates*, or any assessments, charges, or rentals due or to become due, respectively, for the use of sewage system services or for the use or consumption of water supplied to any house or other building or any premises, lot or lots, or parcel or parcels of land, *a lien upon the house or other building* and upon the premises, lot or lots, or parcel or parcels of land upon which the house or other building is situated or *to which the sewage system service or water was supplied. This lien shall become effective immediately upon the distribution of the water or provision of the sewage system service to the premises or property supplied, but shall not be enforceable for more than 3 years after it becomes effective*. [MCL 123.162 (emphasis added).]

In accordance with MCL 123.163, "The lien created by this act may be enforced by a municipality in the manner prescribed in the charter of the municipality, by the general laws of the state providing for the enforcement of tax liens, or by an ordinance duly passed by the governing body of the municipality." In turn, MCL 123.164 addresses the issue of notice with regard to liens created under this statutory scheme, stating: "The official records of the proper officer, board, commission, or department of any municipality having charge of the water distribution system or sewage system shall constitute notice of the pendency of this lien."

Prioritization of liens created within this statutory scheme and a mechanism for landowners to avoid liability for the imposition of liens are discussed in MCL 123.165. The enforcement and collection for liens is addressed in MCL 123.166 as follows:

> *A municipality may discontinue water service* or sewage system service from the premises against which the lien created by this act has accrued if a person fails to pay the rates, assessments, charges, or rentals for the respective service, *or may institute an action for the collection of the same in any court of competent jurisdiction.* However, *a municipality's attempt to collect* these sewage system or water rates, assessments, charges, or rentals by any process *shall not invalidate or waive the lien upon the premises.* [Emphasis added.]

Finally:

> *This act* shall not repeal any existing statutory charter or ordinance provisions providing for the assessment or collection of water or sewage system

rates, assessments, charges, or rentals by a municipality, but *shall be construed as an additional grant of power to any power now prescribed by other statutory charter or ordinance provisions, or as a validating act to validate existing statutory or charter provisions creating liens which are also provided for by this act*. [MCL 123.167 (emphasis added).]

Premised on the language of the statutory provisions of 1939 PA 178, the trial court erred in dismissing and invalidating defendant's liens on plaintiff's real property for the unpaid water charges. Initially, the wording of MCL 123.162 is mandatory through the use of the term "shall." "A necessary corollary to the plain meaning rule is that courts should give the ordinary and accepted meaning to the mandatory word 'shall' and the permissive word 'may' unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole. Thus, the presumption is that 'shall' is mandatory." *Browder v Int'l Fid Ins Co*, 413 Mich 603, 612; 321 NW2d 668 (1982). As a consequence, MCL 123.162 requires the establishment of a lien "as security" for the collection of rates and fees incurred for water usage on the real property that received the service. In addition, the lien is "effective immediately upon the distribution of the water," but with enforceability limited to not "more than 3 years after it becomes effective," or from the date the service was received. Notice of the existence of the lien is deemed constructive through the language of MCL 123.164.

Importantly, a municipality is granted discretion in the manner of collection, as in accordance with MCL 123.163, such liens "may be enforced . . . in the manner prescribed in the charter of the municipality, by the general laws of the state providing for the enforcement of tax liens, *or* by an ordinance duly passed by the governing body of the municipality." (Emphasis added.) As defined[1] in *Merriam-Webster's College Dictionary* (11th ed), the term "or" is "used as a function word to indicate an alternative." See also *Jesperson v Auto Club Ins Ass'n*, 306 Mich App 632, 643; 858 NW2d 105 (2014), lv gtd 497 Mich 987 (2015). This is reinforced through the language of MCL 123.166, which provides that a municipality has the authority to discontinue water service when arrearages exist "or may institute an action for the collection of the same in any court of competent jurisdiction." Of significance is the further provision within MCL 123.166, indicating that collection efforts "shall not invalidate or waive the lien upon the premises." In addition, 1939 PA 178 must be "construed as an additional grant of power . . . or as a validating act . . . ." MCL 123.167. Such language serves to obviate the trial court's determination that defendant's failure to strictly conform to its own ordinance serves to negate the lien mandated by the statutory scheme of 1939 PA 178.

This is not to suggest that defendant is entitled to the entirety of the amount indicated by its liens. As noted in MCL 123.162, the enforceability of the lien cannot extend "for more than 3

---

[1] It is a well-recognized precept that this Court may use and rely on a dictionary to determine the plain and ordinary meaning of a term. *Ryant v Cleveland Twp*, 239 Mich App 430, 433; 608 NW2d 101 (2000), citing MCL 8.3a ("Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.").

years after it becomes effective." At the very least, however, defendant is entitled to payment for those arrearages that are within the timeframe designated by MCL 123.162.

The other statutory scheme relied on by the litigants is the Revenue Bond Act of 1933 (hereinafter "Bond Act"), MCL 141.101 *et seq.* Construction of the Bond Act is governed by MCL 141.102, with "the purpose and intention of this act to create full and complete additional and alternate methods for the exercise of such powers. The powers conferred by this act shall not be affected or limited by any other statute or by any charter, except as otherwise herein provided." It is within the provisions of the Bond Act that discretion is provided to municipalities to "adopt an ordinance relating to the exercise of the powers granted in this act and to other matters necessary or desirable to effectuate this act, to provide for the adequate operation of a public improvement established under this act, and to insure the security of bonds issued." In turn, MCL 141.108 creates a lien for the benefit of bondholders, stating:

> There shall be created in the authorizing ordinance a lien, by this act made a statutory lien, upon the net revenues pledged to the payment of the principal of and interest upon such bonds, to and in favor of the holders of such bonds and the interest coupons pertaining thereto, and each of such holders, which liens shall be a first lien upon such net revenues, except where there exists a prior lien or liens then such new lien shall be subject thereto.

The Bond Act is clear in its prohibitions, such that "free service shall not be furnished by a public improvement to a person, firm, or corporation, public or private, or to a public agency or instrumentality." MCL 141.118(1). As a result:

> Charges for services furnished to a premises *may be a lien on the premises*, and those charges delinquent for 6 months or more *may be certified annually to the proper tax assessing officer or agency* who shall enter the lien on the next tax roll against the premises to which the services shall have been rendered, and the charges shall be collected and the lien shall be enforced in the same manner as provided for the collection of taxes assessed upon the roll and the enforcement of the lien for the taxes. The time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien shall be prescribed by the ordinance adopted by the governing body of the public corporation. However, in a case when a tenant is responsible for the payment of the charges and the governing body is so notified in writing, the notice to include a copy of the lease of the affected premises, if there is one, then the charges shall not become a lien against the premises after the date of the notice. In the event of filing of the notice, the public corporation shall render no further service to the premises until a cash deposit in a sum fixed in the ordinance authorizing the issuance of bonds under this act is made as security for the payment of the charges. In addition to any other lawful enforcement methods, the payment of charges for water service to any premises may be enforced by discontinuing the water service to the premises and the payment of charges for sewage disposal service or storm water disposal service to a premises may be enforced by discontinuing the water service, the sewage disposal service, or the storm water disposal service to the premises, or any combination of the services. The

inclusion of these methods of enforcing the payment of charges in an ordinance adopted before February 26, 1974, is validated. [MCL 141.121(3) (emphasis added).]

Premised on its own language, the Bond Act "shall be liberally construed to effect the purposes hereof." MCL 141.134.

In contrast to 1939 PA 178, the Bond Act is discretionary in areas or procedures relevant to this appeal. Specifically, MCL 141.121(3), through use of the term "may," makes it discretionary for a municipality such as defendant to effectuate a lien for delinquent payments or accumulated arrearages beyond a six month period and permits, as an option, annual certification for placement on the tax rolls for purposes of collection. The details of the method adopted is relegated to the local authority to determine "[t]he time and manner of certification and other details in respect to the collection of the charges and the enforcement of the lien" through adoption of an ordinance. MCL 141.121(3). This appears to be where the confusion ensues based on defendant's adoption of the following ordinance language, as permitted by MCL 141.121(3):

> Charges for water service constitute a lien on the property served, and during March of each year the person or agency charged with the management of the system shall certify any such charges which as of March 1st of that year have been delinquent six (6) months or more to the city assessor, who shall enter the same upon the city tax roll of that year against the premises to which such service shall have been rendered; and said charges shall be collected and said lien shall be enforced in the same manner as provided in respect to taxes assessed upon such roll. [Livonia Ordinance, § 13.08.350(A).]

Reviewing the interplay of Livonia Ordinance, § 13.08.350(A) and MCL 141.121(3), indicates that MCL 141.121(3) provides the discretion to treat water service arrearages as a lien, with the option to place charges that are more than six months in delinquency on a municipality's tax rolls. Although MCL 141.121(3) provides for "[t]he time and manner of certification" along with "details in respect to the collection of the charges and the enforcement of lien" to be "prescribed by the ordinance adopted by the governing body," there is no language mandating an immediate placement on the tax rolls. Similarly, defendant's ordinance, while requiring yearly certification of delinquencies implies a level of discretion in the certification because it does not require immediate certification of a delinquency of six months but rather certification of delinquencies that have existed for "six (6) months or more." Livonia Ordinance, § 13.08.350(A). In other words, MCL 141.121(3) provides discretion in the creation of liens for delinquent water usage charges with the minimal delinquency criteria to initiate collection efforts, while the local ordinance provides the methodology and authority to be followed once a determination has been made to pursue enforcement or collection efforts.

Such an interpretation provides a more reasoned and fair result and is in accordance with the rules of statutory construction. As discussed by our Supreme Court in *Waltz*, 469 Mich at 665-666 (citations and quotation marks omitted):

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. To reach this goal, this Court has recognized the rule that statutes relating to the same subject matter should be read and construed together to determine the Legislature's intent. Further, it is a maxim of statutory construction that every word of a statute should be read in such a way as to be given meaning[.]

As detailed above, the . . . provisions . . . are interconnected and are part of a common legislative framework. Because the various statutory provisions implicated in this case relate to the same subject matter, the terms of the provisions should be read in pari materia. The object of the rule in pari materia is to carry into effect the purpose of the legislature as found in harmonious statutes on a subject.

Statutes in pari materia are defined as " 'those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times . . . .' " *Id.* at 666, quoting *Detroit v Mich Bell Tel Co,* 374 Mich 543, 558; 132 NW2d 660 (1965), abrogated in part on other grounds *City of Taylor v Detroit Edison Co*, 475 Mich 109; 715 NW2d 28 (2006).

All of the cited statutory provisions or schemes seek, at least in part, to provide mechanisms for the collection for water services that have been rendered but where payment for the services has fallen into arrears. All of the statutory provisions are clear that the provision of such services is not "free" and for the need to provide "security" for payment. See MCL 123.162; MCL 141.118(1); Livonia Ordinance, § 13.08.300 ("No free service shall be furnished by said system to any person, public or private, or to any agency or instrumentality."). While 1939 PA 178 is the most adamant regarding the applicability of a lien for water arrearages, it also provides wide discretion to the water service provider regarding the means for collection and enforcement. While permitting liens for delinquent water charges, the Bond Act provides greater discretion in the election of collection methods to be used by a municipality, MCL 141.121(3).

The trial court's error was in reading the statutory provisions as unrelated entities and elevating the local ordinance to a position that would supersede 1939 PA 178 and MCL 141.101 *et seq.*, rather than viewing all of the statutory schemes in a comprehensive and cohesive manner. In this instance, MCL 123.162 provided for the immediate effectuation of a lien for any water charges incurred on plaintiff's property. Notice of the existence of such a lien was constructive in accordance with MCL 123.164 and did not require actual notice by defendant to plaintiff for the lien to be valid. The method of enforcement for the lien was discretionary, with MCL 123.163 permitting defendant to elect methods prescribed "in the charter of the municipality, by the general laws of the state providing for the enforcement of tax liens, or by an ordinance duly passed by the governing body of the municipality." Most importantly, defendant, or any other similarly situated municipality, is not constrained in the manner for collection of the arrearages, rendering the validity of the liens sacrosanct, MCL 123.166, other than the imposition of limitations on when enforcement or collection actions can initiate, MCL 141.121(3), and the length of time available for enforcement, MCL 123.162.

In addition, in the context of a lighting utility, the statutory scheme has been addressed in the federal court.[2] See *Brown Bark I, LP v Traverse City Light & Power Dep't*, 736 F Supp 2d 1099 (2010), aff'd 499 F Appx 467 (CA 6, 2012). Specifically, denying the necessity of a municipal authority or government utility "to file a specific lien . . . before the unpaid charges will cause the formation of a lien," the court, citing an unpublished decision of this Court, opined:

> So long as the municipality's governing body has enacted an ordinance exercising its § 141.121(3) authority . . ., the lien automatically comes into being as soon as the private party incurs the "charges for services furnished to [its] premises." Thus, by operation of the statute and the municipal implementing ordinance, [the] lien against the . . . property came into being each time [the municipality] furnished [the utility service] to that property. [*Brown Bark I, LP*, 736 F Supp 2d at 1119.]

It was noted that delinquent charges exceeding six months "are to be *treated like* unpaid taxes." *Id.*, citing MCL 141.121(3). Proceeding "to ascertain the 'manner provided for collection of taxes assessed upon the roll,' " the court found it necessary to consult other Michigan statutes, including Michigan's General Property Tax Act, MCL 211.55 *et seq.*, which was noted to provide, in relevant part:

> The people of this state have a valid lien on property returned for delinquent taxes, with rights to enforce the lien as a preferred or first claim on the property. The right to enforce the lien is the prima facie right of this state and shall not be set aside or annulled except in the manner and for the causes specified in this act. [MCL 211.60a(4).]

This further serves to support the contention that the trial court erred in invalidating the liens in their entirety, as the trial court's ruling does not comport with the referenced statutory schemes or recognized statutes relevant to enforcement.

As such, we vacate the trial court's ruling and remand this matter to the trial court to reinstitute the liens, subject to factual determinations to be made regarding whether any of the charges incurred have exceeded the time limitations for enforcement.

Our ruling is not altered by plaintiff's contention that defendant was aware that plaintiff's tenant was the user of the services provided because of various negotiations and agreements entered into between defendant and Awrey, thereby comprising a notice of disavowal of liability, which is without merit. Specifically, MCL 123.165 provides a method for a landowner to avoid liability for a tenant's water arrearage accrual:

---

[2] "[F]ederal case law can only be persuasive authority, not binding precedent, in resolving the present case, which involves only questions of state law." *Sharp v City of Lansing*, 464 Mich 792, 803; 629 NW2d 873 (2001).

[T]his act shall not apply if a lease has been legally executed, containing a provision that the lessor shall not be liable for payment of water or sewage system bills accruing subsequent to the filing of the affidavit provided by this section. An affidavit with respect to the execution of a lease containing this provision *shall be filed* with the board, commission, or other official in charge of the water works system or sewage system, or both, and 20 days' notice shall be given by the lessor of any cancellation, change in, or termination of the lease. The affidavit shall contain a notation of the expiration date of the lease. [Emphasis added.]

A similar provision exists within MCL 141.121(3), which provides in relevant part:

However, in a case when a tenant is responsible for the payment of the charges and the governing body is so notified in writing, the notice to include a copy of the lease of the affected premises, if there is one, then the charges shall not become a lien against the premises after the date of the notice. In the event of filing of the notice, the public corporation shall render no further service to the premises until a cash deposit in a sum fixed in the ordinance authorizing the issuance of bonds under this act is made as security for the payment of the charges.

It is undisputed that plaintiff did not provide an affidavit in accordance with MCL 123.165 or provide written notification as required in MCL 141.121(3). Plaintiff cannot escape the mandatory nature of the requirements delineated in MCL 123.165 through use of the word "shall." MCL 141.121(3), when viewed in conjunction with MCL 123.165, indicates the necessity of an affirmative act by plaintiff to avoid liability. The fact that defendant was aware of Awrey's tenant-status does not relieve plaintiff of its responsibility to engage in an affirmative act to avoid liability as a landlord.

Next, defendant takes issue with the trial court's failure to grant summary disposition in defendant's favor on plaintiff's remaining tort and equitable claims. We agree that the trial court shirked its responsibilities in failing to address these issues, alternatively indicating they were moot or premature due to the ongoing nature of discovery. Although plaintiff contends that if this Court deems error occurred, the claims should be remanded to the trial court for the completion of discovery, a remand is unnecessary. This Court reviews a trial court's decision regarding the applicability of governmental immunity de novo. *Fingerle*, 308 Mich App at 343. "A motion under MCR 2.116(C)(10) is generally premature if discovery has not been completed unless there is no fair likelihood that further discovery will yield support for the nonmoving party's position." *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). In this instance, the claims are subject to dismissal as matters of law in accordance with MCR 2.116(C)(7) and (8) rendering the necessity of remand to permit additional discovery unnecessary.

Plaintiff's complaint is cursory in the exposition of these claims. In support of its claim of estoppel or waiver, plaintiff asserts defendant's entry into the subordination agreement precluded enforcement of the unpaid water charges and tax liens. It contends defendant's agreement to subordinate its liens in favor of Awrey's lender improperly diverted funds that could have been used to pay the outstanding charges and, therefore, should be deemed a waiver.

Plaintiff fails to identify the type of estoppel specifically asserted, leading this Court to assume, based on its pairing with an assertion of waiver, that plaintiff is asserting equitable estoppel. *Huhtala v Travelers Ins Co*, 401 Mich 118, 132-133; 257 NW2d 640 (1977) ("Equitable estoppel is essentially a doctrine of waiver.").

"Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v Zahorik*, 460 Mich 320, 335; 597 NW2d 15 (1999) (citation omitted). Plaintiff's claim is deficient as it lacks any assertion or evidence that defendant made any representation to plaintiff. Any representations made were to Awrey and Cole Taylor Bank, entities that are not parties in this case. Hence, plaintiff's assertions of estoppel or waiver do not comprise viable claims.

Next, plaintiff claims unjust enrichment and quantum meruit, making the broad assertion that entry into the subordination agreement improperly diverted monies and enriched defendant to the detriment of plaintiff. "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006). As such, claims for unjust enrichment and quantum meruit have historically been treated in a similar manner. *Id.* at 195; *Roznowski v Bozyk*, 73 Mich App 405, 409; 251 NW2d 606 (1977). In order to establish a claim of unjust enrichment, plaintiff must demonstrate: "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). Plaintiff has failed to demonstrate that defendant received a benefit through plaintiff from the subordination agreement. Any potential benefit received by defendant was through Awrey, not plaintiff. "Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Estate of McCallum*, 153 Mich App 328, 335; 395 NW2d 258 (1986). Plaintiff's complaint is also internally inconsistent in that it asserts defendant received a benefit from the subordination agreement while concurrently asserting that by agreeing to subordinate its liens on Awrey's personal property to Cole Taylor Bank defendant voluntarily relinquished any benefit it would have been entitled to receive. This claim also lacks merit.

Plaintiff also asserts that defendant breached its ordinance and that as a proximate result of the breach plaintiff incurred damage. Based on our analysis regarding the statutory schemes pertaining to the delinquent water charges, this claim is rendered moot. "A moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision, in advance, about a right before it has been actually asserted and tested, or judgment upon some matter which, when rendered, for any reason cannot have practical legal effect upon the then existing controversy." *Parsons Investment Co v Chase Manhattan Bank*, 466 F2d 869, 871 (CA 6, 1972) (citation omitted). We further note that plaintiff mistakenly pleaded this claim as suggestive of strict liability or having been established as a matter of law, which is incorrect. "[B]reach of an ordinance is evidence of negligence, not negligence per se." *Rotter v Detroit United R*, 205 Mich 212, 231; 171 NW 514 (1919). The claim is not sustainable.

-10-

Plaintiff's remaining claims encompass tortious interference and civil conspiracy. The tortious interference claim is premised on plaintiff's assertions that defendant improperly interfered in its lease with Awrey through entry into the subordination agreement, which diverted funds from the payment of the water arrearages and failed to comport with defendant's ordinance. The civil conspiracy claim is intrinsically related to the tortious interference claim as it is premised on the same alleged behaviors between Awrey, Cole Taylor Bank and defendant. It is in regard to these claims that defendant asserts governmental immunity.

As discussed in *Laurence G Wolf Capital Mgt Trust Agreement v City of Ferndale*, 269 Mich App 265, 269-270; 713 NW2d 274 (2005), "Generally, governmental agencies engaged in the exercise or discharge of a governmental function, i.e., an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law, are immune from tort liability." There is no intentional tort exception to governmental immunity. *Harrison v Director of Dep't of Corrections*, 194 Mich App 446, 450; 487 NW2d 799 (1992).

At the outset, plaintiff's complaint makes no reference or mention of governmental immunity with respect to these claims. Specifically, plaintiff failed to allege the tortious interference occurred during the exercise of a nongovernmental function or that a statutory exception to immunity was applicable. Plaintiff never alleged in its complaint or discussed whether the collection or enforcement of water charges comprised a governmental function, nor asserted a pecuniary benefit, nor a proprietary function. Because plaintiff failed to state a claim that falls within a statutory exception or to assert facts in its pleadings to demonstrate that the alleged tortious action occurred during the exercise of a nongovernmental or proprietary function, plaintiff failed to plead in avoidance of governmental immunity and its claims are subject to dismissal pursuant to MCR 2.116(C)(8).

Even if plaintiff's pleadings were deemed adequate, summary disposition would still be appropriate. To survive a summary disposition motion premised on governmental immunity, a plaintiff is required to allege facts sufficient to demonstrate that governmental immunity is inapplicable or warranting the application of an exception. *Tarlea v Crabtree*, 263 Mich App 80, 87-88; 687 NW2d 333 (2004); *Summers v City of Detroit*, 206 Mich App 46, 48; 520 NW2d 356 (1994).

Plaintiff implies that defendant's effort to collect overdue water charges for services provided does not comprise a governmental function. A "governmental function" is defined as an activity "expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b); *Maskery v Univ of Mich Bd of Regents*, 468 Mich 609, 613-614; 664 NW2d 165 (2003). The definition of governmental function is to be broadly applied. *Id.* at 614. The determination of whether an activity is a governmental function must be focused on the general activity and not the specific conduct involved at the time of the tort. *Tate v Grand Rapids*, 256 Mich App 656, 661; 671 NW2d 84 (2003).

It cannot be reasonably asserted or maintained that defendant's operation of a municipal water supply did not constitute a governmental function. It is routinely acknowledged that "[t]he operation of a municipal water supply system is a governmental function[.]" *Citizens Ins Co v Bloomfield Twp*, 209 Mich App 484, 487; 532 NW2d 183 (1994), citing MCL 41.331 *et seq.* and

-11-

MCL 41.411 *et seq.* As such, plaintiff's claims of tortious interference and civil conspiracy cannot be sustained.

We vacate the trial court's ruling and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant may tax costs.

/s/ David H. Sawyer
/s/ Jane M. Beckering
/s/ Mark T. Boonstra