# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF POTTERVILLE,

Plaintiff-Appellant,

v

COUNTY OF EATON, EATON COUNTY
CENTRAL DISPATCH, POTTERVILLE
PUBLIC SCHOOLS, and TOWNSHIP OF
BENTON,

Defendants-Appellees.

UNPUBLISHED
November 21, 2017

No.  333221
Eaton Circuit Court
LC No.  15-001474-CK

Before:  O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

This dispute relates to an agreement between defendant Benton Township (the Township) and defendant Potterville Public Schools (the School District) for the Township's provision of fire and emergency medical services (EMS) to the School District.  Plaintiff, City of Potterville (the City), challenges the validity of this contract and argues that a valid contract is necessary for the provision of emergency services outside the agency's jurisdiction.  The City appeals by right the trial court's order granting defendants' motions for summary disposition under MCR 2.116(C)(8) (failure to state a claim).  We affirm.

## I.  FACTS

The Township and the City are bordering municipalities within Eaton County (the County).  Until 2014, they jointly operated a fire and EMS service.  At that time, the City created its own fire department and contracted out for EMS services.

In July 2015, the Township contracted with the School District to provide fire and EMS services to the School District.  The Township agreed to furnish emergency services to the school for compensation.

The City filed suit, asserting that it had the exclusive authority to respond to fire and EMS calls within its jurisdiction, which included the School District.  The City requested a declaratory judgment that the contract between the Township and School District was not authorized by law, that Eaton County Central Dispatch (Central Dispatch) was not authorized to dispatch the Township to emergency calls originating within the City's boundaries, and that the

-1-

City should respond to those calls. The City also sought to enjoin Central Dispatch from sending the Township to respond to emergency calls within the City's boundaries.

In response, the County and Central Dispatch moved for summary judgment under MCR 2.116(C)(8). The County and its Central Dispatch argued that a contract did not govern dispatch.

The Township moved for summary disposition under MCR 2.116(C)(5) (standing) and (C)(8). The Township argued that its contract with the School District was valid, that the City did not have exclusive authority to provide emergency services within its jurisdiction, and that the City lacked standing to challenge the validity of the contract between the Township and the School District. The School District also moved for summary disposition under MCR 2.116(C)(8) for the reasons argued by the Township.

The trial court granted summary disposition to defendants under MCR 2.116(C)(8) because the Emergency 9-1-1 Service Enabling Act, MCL 484.1101 *et seq*. (the 911 Act), gives the County the authority to decide who will provide emergency services. The trial court reasoned that the closest available unit should be dispatched to avoid putting people in danger. Thus, the trial court concluded, it could not grant declaratory relief because the City's argument was moot.

## II. STANDARD OF REVIEW

We review a grant of summary disposition under MCR 2.116(C)(8) de novo. *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). This Court accepts all factual allegations as true and construes them in the light most favorable to the nonmoving party. *Id*. Summary disposition under MCR 2.116(C)(8) is proper when the claims "are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted). The Court may only consider the pleadings when considering a motion for summary disposition under MCR 2.116(C)(8). MCR 2.116(G)(5).

## III. DISCUSSION

The City first argues that the trial court erred by holding that the County must dispatch the closest available unit. The City maintains that contracts govern dispatch. We disagree.

The 911 Act defines the entity that receives 911 calls:

"Primary public safety answering point", "PSAP", or "primary PSAP" means a communications facility operated or answered on a 24-hour basis assigned responsibility by a public agency or county to receive 9-1-1 calls and to dispatch public safety response services, as appropriate, by the direct dispatch method, relay method, or transfer method. It is the first point of reception by a public safety agency of a 9-1-1 call and serves the jurisdictions in which it is located and other participating jurisdictions, if any. [MCL 484.1102(z).]

" 'Direct dispatch method' means that the agency receiving the 9-1-1 call at the public safety answering point decides on the proper action to be taken and dispatches the appropriate available public safety service unit located closest to the request for public safety service." MCL 484.1102(*l*).

A "clear and unambiguous statute leaves no room for judicial construction or interpretation." *In re Certified Question from the US Court of Appeals for the Sixth Circuit*, 468 Mich 109, 113; 659 NW2d 597 (2003) (quotation marks and citation omitted). MCL 484.1102(*l*) does not discuss or imply dispatch on the basis of a contract. Accordingly, the clear and unambiguous language supports the trial court's ruling that the County properly dispatches the closest available unit. Therefore, there was no need for the trial court to address the validity of the contract between the Township and the School District to determine whether the County was required to dispatch the closest available unit because the contract was superfluous to this question. Thus, the trial court did not err when it concluded that the County should dispatch the closest available unit.[1]

Next, the City argues that the Township was required to enter into a valid contract to provide emergency services outside its jurisdiction. The City cites several statutes to support this proposition. A township "may contract" with another municipality to receive or provide "police or fire" services, MCL 41.806(2), "may" enter into multiple agreements to provide "police or fire protection" to another municipality, MCL 41.806(5), and "may" operate an ambulance jointly with another municipality or private entity, MCL 41.711. Local governments, singly or in combination, "may operate an ambulance operation or a nontransport prehospital life support operation" or contract for the provision of those services. MCL 333.20948(1). Multiple municipalities "may incorporate an authority" to provide emergency services to the municipalities, MCL 124.602(1), or contract for the provision of those services, MCL 124.608.

The statutory availability of a variety of ways for a township or municipality to receive or provide emergency services by contract does not support the City's conclusion that a township or municipality *must* enter into a contract for that purpose. Each of the cited statutes includes the word "may." Generally, the word "may" is permissive, and the word "shall" is mandatory. See *NL Ventures VI Farmington, LLC v City of Livonia*, 314 Mich App 222, 230; 886 NW2d 772 (2016). None of the statutes cited includes the mandatory "shall" requiring a township to enter into a contract to provide emergency services. Therefore, the statutes cited merely allow a township to enter into a contract to provide emergency services outside its jurisdiction, but they do not *require* a township to enter into a contract to do so.

---

[1] The City contends that its fire station is closer to the school than the Township's fire station. The nearest "public safety service unit" does not necessarily equate to the building housing these units, such as a fire truck or an ambulance. See MCL 484.1102(dd) (defining a " '[p]ublic safety agency' " as "a functional division of a public agency, county, or the state that provides fire fighting, law enforcement, ambulance, medical, or other emergency services").

Because we hold that a contract is not required for a municipality to provide emergency services outside its jurisdiction, we decline to address the validity of the contract between the Township and the School District. Likewise, the trial court did not err by not reaching this issue.

We affirm.

/s/ Peter D. O'Connell
/s/ William B. Murphy
/s/ Kirsten Frank Kelly