# STATE OF MICHIGAN

# COURT OF APPEALS

AFSCME COUNCIL 25 AND ITS LOCALS 25, 101, 409, 1659, 1862, 2057, 2926 and 3317,

Plaintiffs-Appellees/Cross-Appellants,

v

WAYNE COUNTY,

Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
September 20, 2018

No. 337964
Wayne Circuit Court
LC No. 16-011322-CZ

Before: O'CONNELL, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right the trial court opinion and order granting in part plaintiffs', Michigan AFSCME Council 25 and its Locals 25, 101, 409, 1659, 1862, 2057, 2926, and 3317 (herein plaintiffs when referenced jointly), motion to compel arbitration regarding the eligibility for receipt of the "13th check." On cross-appeal, plaintiffs challenge the same order to the extent it denied their motion to compel arbitration regarding their grievances pertaining to defendant's underfunding of the retirement plan and the discontinuation of disability retiree health care benefits. We affirm.

This appeal arises from three issues grieved by plaintiffs against defendant, which plaintiffs assert should be submitted for arbitration in conformance with various collective bargaining agreements (CBAs) identified as: (a) CBA I – AFSCME Locals 1862, 2057, and 2926, dated October 1, 2011, through September 30, 2014, (b) CBA II – AFSCME Council 25 and Locals 25, 101, 409, and 1659, for a term ending September 30, 2014, and (c) CBA III – AFSCME Local 3317, AFL-CIO Sergeants, Lieutenants, and Captains, October 1, 2011, through September 30, 2014. The issues identified for arbitration by plaintiffs are the following:

Defendant has failed to meet its contractual duty to fully fund the pension system by making annual contributions to that system as determined by the Retirement Commission. Further, Defendant simply abolished the Inflation Equity Fund [IEF] – a retirement benefit funded by excess investment earnings that were used to pay a "13th Check" to act as a buffer against inflation. Finally, Defendant discontinued healthcare benefits for those who retire from a duty or non-duty disability without bargaining with Plaintiff [sic].

-1-

The trial court granted plaintiffs' motion to compel arbitration regarding the 13th check, but denied plaintiffs' request for arbitration on the grievances pertaining to the underfunding of the pension system and retiree disability healthcare benefits.

"[T]he existence and enforceability of an arbitration agreement are questions of law for a court to determine de novo." *Michelson v Voison*, 254 Mich App 691, 693-694; 658 NW2d 188 (2003). "We review de novo a trial court's determination whether an issue is subject to arbitration. We also review de novo as a question of law issues involving contract interpretation." *AFSCME Council 25 v Wayne Co*, 290 Mich App 348, 350 n 2; 810 NW2d 53 (2010). While not characterized by the parties as such, our Supreme Court has indicated that a motion to compel arbitration is equated to a motion for summary disposition under MCR 2.116(C)(7). *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016). Specifically:

> This Court reviews de novo a circuit court's decision on a motion for summary disposition brought under MCR 2.116(C)(7). Under MCR 2.116(C)(7), summary disposition is appropriate if a claim is barred because of "an agreement to arbitrate[.]" Whether a particular issue is subject to arbitration is also reviewed de novo, as is the interpretation of contractual language. [*Id.*]

Issues of statutory construction are also reviewed de novo. *Hastings Mut Ins Co v Grange Ins Co of Mich*, 319 Mich App 579, 583; 903 NW2d 400 (2017). "Questions pertaining to justiciability and ripeness comprise constitutional issues, which are also reviewed de novo." *City of Huntington Woods v City of Detroit*, 279 Mich App 603, 614; 761 NW2d 127 (2008). "Additionally, the application of a legal doctrine, such as res judicata, presents a question of law that we review de novo." *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007).

## I. 13TH CHECK

Defendant challenges the trial court's grant of plaintiffs' motion to compel arbitration, in part, thereby permitting plaintiffs' grievances regarding the 13th check to proceed to arbitration. Defendant asserts the first grievance was not timely because the grievance was not served until July 1, 2015, after the expiration of CBAs I and II on September 30, 2014. Similarly, for CBA III, defendant asserts the grievance was filed on June 26, 2015, after the June 19, 2015 expiration of CBA III. Defendant further contends the trial court erred in failing to apply this Court's decision in *AFSCME Council 25*, 290 Mich App at 348, or to recognize that disbursement of the 13th check was discretionary and not a contractual right.

CBAs I and II provide:

> The detailed provisions of the Wayne County Employees' Retirement System shall control except where changed or amended below.

> * * *

> Employees in the Hybrid Retirement Plan shall be eligible for post[-]retirement cost-of-living adjustments in the form of distributions from the Reserve for Inflation Equity.

CBA III also acknowledges the Wayne County Employees' Retirement System provisions are controlling, and additionally states: "All employees hired on or after October 1, 2008 shall not be eligible for a 13th check upon retirement."

The history of amendment of Section 141-32 of the Wayne County Code of Ordinances was discussed by our Supreme Court in *Wayne Co Employees Retirement Sys v Wayne Co*, 497 Mich 36, 38-39; 859 NW2d 678 (2014):

> The Wayne County Employees Retirement System ("retirement system") was established in 1944 "for the purpose of providing retirement income to eligible employees and survivor benefits." Wayne County Charter § 6.111. Currently, the retirement system consists of five defined benefit plans, one defined contribution plan, and the Inflation Equity Fund (IEF). Each year, the county is required by Const 1963, art 9, § 24, to make an "annual required contribution" (ARC). An annual actuarial valuation determines the ARC amount. MCL 38.1140m.

> The IEF was created in 1985 by county ordinance to provide a pool of money for discretionary payments to eligible retirement system participants and beneficiaries in addition to those payments required by the pension system, as a method to counteract the effect of inflation. Payments from the IEF are known as the "13th check." The IEF is funded by investment profits earned on the assets held in the defined benefit plans and the IEF, to the extent those profits exceed a certain rate of return.

> In 2010, Wayne County faced a substantial fiscal obligation in order to satisfy its actuarially determined ARC. In order to satisfy its ARC obligation, the county passed an ordinance amendment, Wayne County Code of Ordinances (WCCO), §§ 141-32 and 141-36, as amended by Wayne County Enrolled Ordinance No. 2010-514. As is relevant here, the amended ordinance limited the IEF to a maximum balance of $12 million, and directed that IEF funds exceeding that amount be transferred to the retirement system's defined benefit plans. Because the IEF balance at the time was significantly greater than $12 million, the ordinance resulted in a transfer of $32 million from the IEF into the defined benefit plans. The amended ordinance further permitted the county to use the $32 million transfer from the IEF to the defined benefit plans as an offset against its ARC obligation.

As of its June 18, 2015 amendment, Section 141-32 of the Wayne County Code of Ordinances abolished the IEF and states:

> (a) As of the effective date the ordinance from which this section is derived, the reserve fund for inflation equity ("IEF") previously established by the retirement commission pursuant to this section shall be abolished. All assets of the IEF shall be transferred to the defined benefit plan and shall be credited to the defined benefit plan assets. Such credit shall not offset or be used in any way to reduce the county's required defined benefit contribution.

(b) Nothing in this section shall preclude the county from reducing or eliminating its contribution for a fiscal year in which defined benefit assets exceed defined benefit liabilities.

Defendant contends that the issue is not subject to arbitration because the grievances were not timely, asserting it was not required to arbitrate disputes that arose outside the terms of the relevant CBAs. Typically:

Procedural questions such as timeliness are generally left to the arbitrator. "The duty to arbitrate grievances arises from [the] contractual agreement between an employer and its employees." Where an employer and a union have contractually agreed to arbitration, in the absence of explicit contractual direction to the contrary, all doubts regarding the proper forum should be resolved in favor of arbitration[.] [*American Federation of State v Hamtramck Housing Comm*, 290 Mich App 672, 674; 804 NW2d 120 (2010) (citations omitted).]

In this instance, the various CBAs contained the following provision regarding the grievance procedures:

In the event differences should arise between the Employer and the Union *during the term of this Agreement* as to the interpretation and application of any of its provisions, the parties shall act in good faith to promptly resolve such differences in accordance with the . . . procedures [contained within the CBA]. [Emphasis added.]

Also of significance is the identified durations and dates of termination for the respective agreements. For CBAs I and II[1]:

This Agreement shall continue in effect for successive yearly periods after September 30, 2014 unless notice is given in writing by either party at least sixty (60) days prior to September 30, 2014 or any anniversary date thereafter, of its desire to modify, amend or terminate this agreement.

The initial matters to be resolved are (a) when the "differences" arose between the parties, and (b) whether the respective CBAs were in effect or had been terminated at the identified time the disputes arose.

Defendant asserts the grievances on the 13th check are untimely either because (a) they arose in conjunction with the initial amendment of the ordinance in 2010, which preceded the relevant CBAs and that the CBAs effectively incorporated the 2010 amendment in the ratification of the CBAs adopted and initiating October 1, 2011, or (b) the grievances were filed after the June 18, 2015 ordinance amendment and were outside the effective dates of the CBAs.

---

[1] Similar language is also contained in CBA III.

While defendant's contention is correct regarding the 2010 ordinance amendment, which would have been known at the time of the adoption of the October 1, 2011 CBAs, the argument is not necessarily applicable to the 2015 amendment given the extensions of the various CBAs.

On September 22, 2015, defendant sent correspondence to the unions regarding CBAs I and II, indicating:

> Pursuant to my authority under P.A. 436 of 2012 and the Consent Agreement with the State of Michigan, the collective bargaining agreement which expired on September 30, 2014 between the County of Wayne and AFSCME Council 25, collectively with its Locals . . . ("The collective bargaining agreement") is extended through September 30, 2015.

With reference to CBA III, numerous amendments to a "memorandum of agreement" were implemented, including a fifth amendment, which stated in relevant part:

> 1. Both the October 1, 2014 Agreement, as well as the Amendments, are further modified and amended in order that Local 3317 may re-file its petition . . . until, but not later than July 1, 2015.
>
> 2. The parties further agree that, except where prohibited by law, absent agreement of the parties to the contrary, the collective bargaining agreement shall be extended in its totality until the earlier of the date when the petition is re-filed, or July 1, 2015, and that this fifth amendment shall be interpreted consistent with P.A. 322 of 2014.
>
> 3. The parties further agree that all provisions of the October 1, 2014 Agreement as well as the Amendments, not inconsistent with those stated herein, shall continue in full force and effect.

Based on the extensions to the various CBAs, to either July 1, 2015 or September 30, 2015, the June 28, 2015 ordinance amendment comprises a "difference" that arose "during the term of the agreement."

As previously recognized, "there is a presumption of arbitrability when a CBA contains an arbitration clause." *AFSCME Council 25*, 290 Mich App at 353. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id*. at 353-354 (citation omitted). Because the issue regarding the abolishment of the IEF arose during the extension periods for the various CBAs, the grievances should, as determined by the trial court, proceed to arbitration.

Defendant's contention that the extensions of the various CBAs were immaterial or inapplicable to a determination of the timeliness of the grievances, and challenging their retroactive application, is without merit. Defendant's suggestion that the extensions for the CBAs should not be construed as retroactive is contrary to the language of the extension and simple principles of contract law. For CBAs I and II, the extensions state, in relevant part, "the

collective bargaining agreement which expired on September 30, 2014 . . . is extended through September 30, 2015" with some limited identified exceptions. Similarly, the fifth amendment to CBA III indicates that "the collective bargaining agreement shall be extended in its totality until the earlier date when the petition is re-filed, or July 1, 2015. . . ."

As discussed in *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007):

> The goal of contract interpretation is to first determine, and then enforce, the intent of the parties based on the plain language of the agreement. If no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and enforce the language as written, unless the contract is contrary to law or public policy. Plain and unambiguous contract language cannot be rewritten by the Court "under the guise of interpretation," as the parties must live by the words of their agreement. The meaning of clear and unambiguous contract language is a question of law. [Citations omitted.]

In this instance, with reference to CBAs I and II, the extension provides that the CBA, "which expired on September 30, 2014 . . . *is extended* through September 30, 2015." Similarly, the fifth amendment to CBA III states that the CBA "*shall be extended in its totality* until . . . or July 1, 2015[.]" The words "is" and "shall" are definitive and mandatory.[2] Further, defendant's argument appears to conflate two related topics of arbitrability pertaining to issues of accrued or vested rights after a CBA has expired in comparison to issues that arise during the effective period of a CBA. As discussed by this Court:

> This Court acknowledged that the right to arbitration may survive the expiration of a CBA when the dispute involves accrued or vested rights. However, this Court ruled that the specific language in the CBA did not provide for arbitration when the grievance did not arise during the term of the agreement. The arbitration clause provided as follows: " 'It is mutually agreed that all grievances, arising under and during the life of the Agreement, shall be settled in accordance with the procedure herein provided.' " This Court noted that the grievances at issue were based on events that occurred after the expiration of the CBA and held that "[a]lthough the grievances would have been arbitrable had they arisen during the life of the agreement, under the terms of the agreement they are not arbitrable after expiration." [*AFSCME Council 25*, 290 Mich App at 353.]

Thus, if the grievances were untimely and their filing restricted by specific language in the CBA, they would not be arbitrable. That restriction is not applicable here.

---

[2] "[T]he presumption is that 'shall' is mandatory." *NL Ventures VI Farmington, LLC v City of Livonia*, 314 Mich App 222, 230; 886 NW2d 772 (2016). The word "is" comprises the third personal singular present indicative of "be," which is defined as "to exist" or "to take place or occur." *Random House Webster's College Dictionary* (1997).

Defendant further contends that prior decisions of this Court, the circuit court and the MERC have indicated that issuance of the 13th check is discretionary and, therefore, cannot constitute a contractual or vested right. Again, defendant appears to conflate or blur two different concepts. There does not appear to be a dispute that the issuance of a 13th check is dependent on funds being available and the discretion of defendant. The dispute instead is actually on whether defendant could unilaterally eliminate any possibility of issuance of a 13th check by abolishing the IEF while the various CBAs were in effect and contemplate the provision of a 13th check, which is subject to determination by the arbitrator.

## II. DISABILITY RETIREE HEALTH CARE BENEFITS

Plaintiffs argue that the trial court erred in failing to grant their motion to compel arbitration with regard to the disability retirement grievance premised on jurisdiction. Plaintiffs contend a distinction exists between enforcement of this Court's 2014 ruling on a MERC claim for an unfair labor practice in *Wayne Co v Mich AFSCME Council 25*, unpublished per curiam opinion of the Court of Appeals issued October 9, 2014 (Docket No. 312708), and the enforcement of a separate contractual right to a healthcare benefit for disability retirees.

The issue of disability retiree health care benefits has previously been before this Court on appeal from a decision by the MERC. This Court reversed the MERC order finding defendant had breached its duty to bargain. *Mich AFSCME Council 25*, unpub op at 1 (Docket No. 312708). In reversing the MERC, this Court remanded the matter, explaining:

> Here, the parties stipulated to a 30 year history of past practice of providing disability retirees health care benefits regardless of whether they met age or years of service criteria. [Defendant] announced its intent to discontinue payments for health insurance to future disability retires without any bargaining. As of the date of this appeal, its intent was not made manifest. The parties agree that five retirees with disability pensions were awarded health care benefits after 2008 despite both the clear language of the applicable retirement benefits clause and the zipper clauses contained in Local 3317's contracts. The issue between the parties remains whether the continuation of the practice of awarding health insurance to individuals with disability retirement after the 2008 contract, and despite the zipper clause, constituted a past practice that required additional bargaining to change. On remand, the charging parties will have to employ the test from *AFSCME Council 25* and demonstrate that there existed a "meeting of the minds" with respect to the new terms or conditions—[with defendant] intentionally choosing to reject the negotiated contract and knowingly act in accordance with the past practice. [*Id.* at 4 (citations omitted).]

This Court concluded:

> "If the agreement covers the term or condition in dispute, then the details and enforceability of the provision are left to arbitration." [*Macomb Co v AFSCME Council 25*, 494 Mich [65,] 80[; 833 NW2d 225 (2013)] (citation and quotation marks omitted). Here, the grievance and arbitration procedures provided for in Article 10 of the CBAs were bypassed. The scope of the MERC's authority in reviewing a claim of refusal-to-bargain when the parties have a separate grievance

or arbitration process is limited to whether the agreement covers the subject of the claim. *Id.* at 81. When there is evidence that a past practice has modified the collective bargaining agreement, it is left to the arbitrator to make the final determination on the issue and not the MERC. On remand, the arbitrator is to determine whether the test in *AFSCME Council 25* has been met and if so, the appropriate contractual remedy. [*Id.*]

In denying plaintiff's motion to compel arbitration on this issue, the trial court noted that plaintiffs had not sought enforcement of this Court's 2014 ruling and, instead, filed additional grievances. The trial court explained:

Notwithstanding the fact that this Court may wish to compel arbitration, a new grievance on the same issue is not the proper mechanism to enforce arbitration. Enforcement of the October 9, 2014 Court of Appeals decision is not before this Court. Plaintiffs' motion as to the arbitration of the disability health care benefits issue is therefore denied.

While not explicitly identified as such by the trial court, the determination that the current action seeking to compel arbitration on the issue of disability retiree healthcare benefits lacked procedural propriety because of this Court's prior unpublished decision remanding for arbitration of the issue, comprises the application of the doctrine of res judicata. Specifically:

Res judicata bars a subsequent action between the same parties when the essential facts or evidence are identical. This doctrine requires that: (1) the first action be decided on the merits, (2) the matter contested in the second case was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. [*Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 375-376; 521 NW2d 847 (1994).]

The parties in this action and in Docket No. 312708 are identical. The issue presented in Docket No. 312708 pertained to the same disability retiree healthcare benefits but arose from an appeal of plaintiffs' presentation of an unfair labor practice claim with the MERC rather than the filing of a grievance. This Court ruled that the issue was subject to arbitration, *Mich AFSCME Council 25*, unpub op at 4 (Docket No. 312708), which coincides completely with plaintiffs' request in the current action to compel arbitration. As such, this Court has already determined that the disability retiree healthcare issue is arbitrable. "Once substantive arbitrability is determined . . . judicial review effectively ceases." *Felters Co v Local Union 318, Amalgamated Clothing & Textile Workers of America*, 108 Mich App 333, 336; 310 NW2d 233 (1981) (citation omitted). Hence, premised on this Court's prior ruling, the trial court correctly denied plaintiffs' current motion to compel arbitration.

III.  UNDERFUNDED PENSION SYSTEM

Plaintiffs assert the trial court erred in determining that the grievance pertaining to the underfunding of the pension system was not subject to arbitration.  Plaintiffs argue that pension funding levels comprise a contractual right, in accordance with the CBAs, and that the grievance was timely.  In addition, plaintiffs contend the trial court erred in finding that the grievance was not ripe for adjudication.

Plaintiffs argued that the CBAs incorporate Wayne County Ordinance, § 141-36, which is alleged to require the full funding of the retirement system.  Specifically, article 30.01.A. of CBAs I and II, and article 38.01.A of CBA III, state:  "The detailed provisions of the Wayne County Employees' Retirement System shall control except where changed or amended below."  The ordinance asserted to be incorporated in this statement provides:

Sec. 141-36 – Financial objective; contribution certification.

Defined benefit plan.

(a) Financial objective.

(1) The financial objective of the retirement system is to receive contributions each fiscal year which, as a percentage of member payroll, are designed to remain level from year to year and are sufficient to (i) fund the actuarial cost allocated to the current year by the actuarial cost method, and (ii) fund unfunded actuarial costs to prior years by the actuarial cost method as provided by law.

(2) Contribution requirements for defined benefits shall be determined by annual actuarial valuation.  The actuarial cost method shall be one which produces a contribution requirement not less than the contribution requirement produced by the individual entry-age normal cost method.

(3) The excess of actual contributions made for periods after November 30, 1981, over the minimum required by subsections (a)(1) and (2) of this section may be used to reduce contributions required for subsequent fiscal years.

Certification of contribution requirement.  The retirement commission shall certify to the county executive the amount of annual contribution needed to meet the financial objective.

Defined contribution plans.

(a) Financial objective.

(1) Contribution requirements of the county for defined contribution benefits shall be in accordance with the county contribution program specified for a member's coverage group, benefit plan, or ordinance.  [Wayne County Ordinance, § 141-36.]

Contrary to plaintiffs' contention, neither the CBAs nor the local ordinance mandate full financing of the pension system; with the ordinance simply expressing the mechanism for calculation to meet the identified financial objective for the current year. Instead, MCL 38.1133(1) of the Public Employee Retirement System Investment Act (PERSIA) provides: "This act supersedes any investment authority previously granted to a system under any other law of this state." In turn, Const 1963, art 9, § 24 states:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

> Financial benefits, annual funding

> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

According to the CBAs, "[o]nly unresolved grievances which relate to the interpretation, application or enforcement of any specific article and section of this Agreement, or any written supplementary agreement, which have been fully processed through the last step of the grievance procedure as herein provided may be submitted to an arbitrator[.]" As such, based on the absence of any provisions in the respective CBAs pertaining to mandatory full funding of the pensions, the language of the grievance procedure does not lend itself to arbitration of this issue.

Further, it is acknowledged that "[t]he Legislature has the authority to enact legislation that will ensure the pension system is maintained." *Shelby Twp Police & Fire Retirement Bd v Shelby Charter Twp*, 438 Mich 247, 262; 475 NW2d 249 (1991). It has historically been recognized that "[a] clear distinction must be drawn between the right to receive pension benefits and the funding method adopted by the Legislature to assure that monies are available for the payment of such benefits." *Kosa v Michigan Treasurer*, 408 Mich 356, 371; 292 NW2d 452 (1980). In this instance, plaintiffs are disputing the Legislature's funding requirements and not the rights of their respective members to receive pension benefits. In other words, "it is clear that the constitutional proscription against impairment of contract relates to 'accrued financial benefits,' and 'accrued financial benefits' are not the same thing as the 'system' of funding." *Id*. In this instance, because plaintiffs are challenging the actual funding mechanism and not their members' rights to receive a pension, the trial court did not err in finding the issue not to be subject to arbitration.

In addition, the trial court deemed the matter not ripe for resolution. As discussed by this Court in *City of Huntington Woods*, 279 Mich App at 615-616 (citation and quotation marks omitted):

> The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Hence, when considering the issue of ripeness, the timing of the action is the primary focus of concern.

"The existence of an actual controversy is a condition precedent to invocation of declaratory relief and this requirement prevents a court from deciding hypothetical issues." *Id*. at 616 (citation omitted).

The trial court also correctly determined that the issue is not ripe for judicial review. Plaintiffs did not identify any current injury suffered by their members regarding a denial of or failure to receive their pensions. Rather, the issue is entirely speculative regarding the potential for harm to plaintiffs' various members because of a perception or concern that retirement benefits may not be available at some point in the future. As such, the issue is not ripe for adjudication.

Affirmed.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto